164 P.2d 209

## WILSON OIL CO. v. HARDY et al.
### No. 4810.

Supreme Court of New Mexico.
March 29, 1945.

Rehearing Denied Dec. 5, 1945.

Francis C. Wilson, of Santa Fe, for plaintiff in error.

Lee R. York, of Hobbs, for defendants in error.

MABRY, Chief Justice.

This cause comes here upon writ of error. Defendants in error, hereinafter also to be referred to as "workmen", sued and recovered judgment against plaintiff in error, hereinafter also to be referred to as "employer", upon a claim of unpaid overtime due such workmen, which included double the amount of wages due for actual overtime (upon the basis of 150% of the basic pay) plus $500 for attorney fees allowed in the prosecution of the claims. The case arises under the Fair Labor Standards Act of 1938, 52 Stat. at Large, 1060, Chap. 676, 29 U.S.C.A. § 201 et seq. Double the amount of the wages earned as overtime and unpaid is fixed by the statute as additional compensation, or "liquidated damages" in case of the Act's violation as here alleged.

The trial court made the following findings of facts and conclusion of law:

## Findings of Fact

1. That this case was originally brought by R. L. Hardy individually and on behalf of Nevel S. Hardy, but that on the trial of the case the said Nevel S. Hardy appeared in person and by his attorney and entered as a plaintiff.

2. The Court finds that the defendant is a corporation engaged in the prospecting for and producing oil for interstate commerce; and that the two plaintiffs were employees of the said company at all times material to this case engaged in the production of goods for interstate commerce, and that their work came under the provisions of the Fair Labor Standards Act of 1938.

3. That the plaintiffs were employed by the defendant to work on what was known as the Wilson lease and what was known as the Shell lease; that all the wells on the Shell lease were pumped into the storage tanks on that lease and the wells on the Wilson lease were pumped into the storage tanks on that lease, making two batteries of storage tanks.

4. That in order to get the oil from the Shell battery of storage tanks into the commercial pipe lines it was pumped from that battery of storage tanks to a large booster pump located on the Wilson lease at the battery of tanks on that lease, and by the said large booster pump forced into the lines of the commercial lines. That both pumps had to run while the oil was being pumped from the Shell battery, and both of the plaintiffs worked on these operations.

5. That the overtime claimed by the plaintiffs occurred between October 19, 1939 and May 31, 1941. That for the period from October 19, 1939, to October 19, 1940, R. L. Hardy was employed on the basis of a salary of $150 per month, furnished a house and utilities; that beginning with October 19, 1940, he went on the basis of 70 cents per hour for regular time and $1.05 for overtime. Both plaintiffs were required to work seven days per week, and they worked eight hours every day except the days when they were pumping into the commercial lines when they worked more than eight hours per day, as shown by the exhibits admitted in evidence. That R. L. Hardy began keeping the time he actually worked when the pumps were in operation on week ending November 5, 1939, and kept a daily record thereof until he quit the company.

6. That Nevel S. Hardy began keeping his time for the week ending May 19, 1940, and kept a daily record thereof for the hours worked when the pumps were in operation until he quit the company. That from the week ending May 19, 1940, to the week ending October 13, 1940, his rate of pay was 50 cents per hour for regular time and 75 cents for overtime, and from the week ending October 13, 1940, to the week ending January 12, 1941, his rate of pay was 55 cents for regular and 82½ cents for overtime.

7. That for the period up to October 19, 1940, the rate of pay of R. L. Hardy varied from week to week with the fluctuation in the numbers of hours worked, which was found by dividing the number of hours worked each week into the weekly pay which was $34.54 and he is entitled to overtime for this period the sum of $357.55 and for the period from October 19, 1940, to the week ending April 6, 1941, he worked 1,-287 hours overtime, and was paid for 482 hours overtime for that period leaving 805 hours not paid for which figured at his rate of pay for that period would amount to $845.75. That the defendant owes R. L. Hardy the total sum of $1,202.80 for overtime not paid for and a like amount as liquidated damages.

8. That first period of Nevel S. Hardy's time, he worked 605 hours overtime and was paid for 308 hours overtime, leaving 297 hours not paid for, which figured at 75 cents per hour would make the sum of $233.15 owing him for that period, and for the second period of time when he changed rate to 55 cents for regular and 82½ overtime, he worked 449 hours overtime and was paid for 208 hours overtime, leaving 241 hours overtime not paid for, which, at the rate of 82½ cents per hour, amount to $198.88, and he is also entitled to a like amount as liquidated damages.

9. The plaintiffs and each of them admit that they signed the "Labor Time Sheets" attached as exhibits to the answer filed herein by the defendant covering the entire period in each case during which the plaintiffs claim overtime.

10. That a reasonable attorney fee in this case would be $500.

Conclusions of Law.

1. The plaintiffs are entitled to judgment for the overtime not paid for with a like amount as liquidated damages and a reasonable attorney fee in the sum of $500.

Appellant assigns error argued under the following three points:

"Point I. In an employee's action to recover overtime compensation, liquidated damage and an attorney's fee under Fair Labor Standards Act 1938, Secs. 1–19, 29 U.S.C.A. §§ 201–219, the employee had the burden of proving that he worked overtime and how much overtime he worked and such employee is bound to produce convincing and substantial evidence in support of his claim, and prove his cause by greater weight of evidence.

"Point II. There is nothing in the Fair Labor Standards Act of 1938, 52 Stat. at L. 1060, Chap. 676, 29 U.S.C.A. §§ 201 et seq., which prohibits an employer from entering into a contract with an employee working irregular number of hours a week fixing an hourly rate and an overtime rate in accord with the law and a reasonable computation of working hours.

"Point III. The validity of any agreement complying with Fair Labor Standards Act, 1938, 29 U.S.C.A. §§ 201 et seq. between employer and employee and their respective rights and obligations growing out of such an agreement, are to be judged and determined by general contract law."

██ Although the evidence in this connection going to the question whether defendants in error worked the full eight hours per day throughout the time for which these hours are claimed and before beginning the computation of overtime may be rather unsatisfactory, as plaintiff in error so strenuously and ably argues, yet we cannot say that the evidence in this respect is not sufficient, if believed by the trial court, to support the finding attacked. For example, the testimony of R. L. Hardy is to the effect that he spent "eight hours per day or more" on the wells and small pumps before he began to calculate and count overtime, all of which was employed in the work of pumping from the batteries into the commercial line—working on the "big" pump. He testified that he kept no exact record at the time, but that he knew he was putting in the full time, that he worked the full eight hours as nearly as could be determined. Unless the employer be satisfied to leave the matter of time-keeping to the employee, it might be said that some obligation rests upon it (the employer) to itself provide some satisfactory time-keeping method. "Neither the statute nor regulations require that time clocks be used or specify the manner in which an employer has to keep a record of the number of hours worked by his employees." Department of Labor's Interpretative Bulletin No. 13, sec. 3.

██ The evidence in support of the claim of Nevel S. Hardy is likewise sufficiently substantial to support the findings. The claims are not to be considered invalid because the complete record of each day's time may not have been made contemporaneously with the performance of the labor, nor because the employer was not promptly advised of the error in calculation of time required. The method of keeping time goes to the weight of the evidence in this respect and it was a matter for the trial court. It was for the trial court to determine whether the workmen could prove the time spent sufficiently accurate to persuade that the eight hours had actually been put in before the computation began of overtime. The trial court was so persuaded, and so found.

██ While in such an action as this brought under the Fair Labor Standards Act of 1938 "the burden is upon the plaintiff (the workmen) to establish by a preponderance of the evidence the number of hours worked and the amount of wages due; and the evidence to sustain this burden must be definite and certain" (Johnson et al. v. Dierks Lumber & Coal Co., 8 Cir., 130 F.2d 115, 118), the fact that such evidence might appear unsatisfactory in some respects and as to some periods of time to us, a reviewing court, does not permit a disturbance of the trial court's finding in this respect if we can say that the record affords any substantial evidence in support. Nothing is more axiomatic under our method of appraising the trial court's findings.

██ It appears that the attack the employer makes under Point II upon the claim and finding as to all overtime put in, is that the time sheets signed and submitted

at each regular pay-day represented an agreement and contract between the parties and that it is valid and authorized under the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. That is to say, the employer argues that as to the overtime claimed and allowed it was not admissible and was not entitled to be considered because there was an agreement between the parties, as reflected by the signed and submitted work sheets, as to just what overtime would be taken and accepted; and, as to the regular eight hours claimed prior to the beginning of overtime claim, that there is no evidence to support the claim that eight hours were generally employed by the workmen.

It is admitted that both workmen at each semi-monthly payday submitted a paper and memoranda, denominated "Labor Time Sheet", which they now say did not speak the truth, setting forth uniformly (and regardless of the time each of them thereafter claimed to have put in as overtime) hours and rate of pay due therefor as proposed by employer and relied upon by it as just and fair estimate of the time employed. The workmen had never reached any understanding with the employer as to wages and hours excepting as was reflected by the work sheets prepared for them and which they regularly signed and brought in in exchange for their pay checks. Obviously, both employer and the workmen were, at the beginning of the period in question and until after the termination of the employment, laboring under the belief that there was no violation of the Act involved. The workmen, testifying in explanation of why they had not protested the under-pay and had continued to fill out the conventional labor time sheets submitted and required of them, said they were told, or understood, that they had to do this in order to get their pay at all. The difficulty arose subsequent to the employment, when the additional claim was made and resisted.

The case of Overnight Motor Transportation Co. v. Missel, 1941, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682, settles the rule governing such cases and holds contrary to the employer's contention. The United States Supreme Court there held that the private right of contracts is not destroyed by the requirements of the Act, but that the general right to contract with respect to subjects covered, under the commerce clause of the Constitution, is governed thereby. There is placed a restriction as to a minimum wage and the hours to be employed, with rate for overtime, which both the employer and employee must observe in contracting. The constitutionality of this federal legislation has now been definitely settled by our highest court. That the employment here in question comes within the provisions of the Act is not disputed.

The case of L. Metcalfe Walling, Adm'r, v. A. H. Belo Corp., 316 U.S. 624, 62 S.Ct. 1223, 1227, 86 L.Ed. 1716, decided the same day as the Missel case, supra, and which is referred to and, to some extent relied upon by employer, is distinguishable from the Missel case as the Supreme Court in its

opinion in the latter case itself observed. The opinion in the Missel case states [316 U.S. 572, 62 S.Ct. 1222]:

"This contract differs from the one in Walling v. A. H. Belo Corp., 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716, decided today, where the contract specified an hourly rate and not less than time and a half for overtime, with a guaranty of a fixed weekly sum, and *required the employer to pay more than the weekly guaranty where the hours worked at the contract rate exceeded that sum.*" (Emphasis ours).

In the case at bar, there was no requirement to the effect, or any understanding, that the employer would pay for more than the estimated and definitely fixed weekly average regular and overtime hours of employment which was suggested by the employer company. It is a question here of the employer making up and submitting to the workmen what it would consider a fair estimate of the average time which would, from week to week, be required of the workmen under the circumstances of the employment. And, it is unimportant that the employer thought it was being more than generous in its estimation of such time, or even that the employees were at the time it was suggested, satisfied of its fairness.

 The liquidated damage provision, Sec. 16(b) of the Act, is mandatory upon the courts, "regardless of the good faith of the employer or the reasonableness of his attitude." Missel case, supra.

"The Act requires that for each hour of work beyond the statutory maximum the employees must be paid 'not less than one and one-half times the regular rate at which he is employed.'" Walling v. Belo, supra [316 U.S. 624, 62 S.Ct. 1227]. The purpose of the Act was to put a floor on wages and a ceiling on hours. The limitation of hours of work has two purposes, we are told in the Missel case—the spreading of work and extra compensation for overtime, no matter how high the regular wage paid may be.

In the case at bar, and viewing the court's finding in this respect as supported by substantial evidence, as we do, it must be said the Act was violated because the employees of plaintiff in error were not so paid for work beyond this statutory maximum. As to what is the "regular rate" at which the workman is employed, mentioned in the Act and upon which the figure of one and one-half times such rate is figured for overtime, see Walling v. Belo, and the Missel case, supra. We are not prepared to say the trial court did not properly calculate in allowing such overtime. These time slips, signed by the workmen each time they were given their checks, cannot be construed into a contract, if violative of the Fair Labor Standards Act, the workmen appropriately urge. They cite and rely upon Johnson et al. v. Dierks Lumber & Coal Co., 8 Cir., 130 F.2d 115, wherein the U. S. Circuit Court of Appeals said in disposing of a somewhat similar case:

"Contracts between employers and employees subject to the act and prohibited by or inconsistent with its provisions are illegal, and not binding upon the employees. Overnight Motor Transportation Co., Inc., v. Missel [316 U.S. 572], 62 S.Ct. 1216, 86 L.Ed. 1682; Fleming v. Warshawsky & Co., 7 Cir., 123 F.2d 622; Carleton Screw Products Co. v. Fleming, 8 Cir., 126 F.2d 537, 541; United States ex rel. Johnson v. Morley Construction Co., 2 Cir., 98 F.2d 781.

"Under these settled principles of law the court erred in so far as it based its ruling upon its disbelief of Johnson's testimony and upon the statements on the weekly time slips used by the defendant subsequent to December 7, 1940. By the same rule of law the agreement alleged by the defendant to have been made with each of the plaintiffs to the effect that the number of hours worked each day should not exceed six is of no avail, provided the evidence shows that the plaintiffs actually worked more than six hours a day. 29 U. S.C.A. § 203(g)."

Employer would distinguish the Johnson case, supra, but we do not believe the difference to be noticed between the facts there involved and those of the case at bar are distinguishable to the extent claimed. It argues that the labor time sheets in the Johnson case were not, as here, the result of an agreement as to a fair average of regular and overtime from week to week and from month to month—that there it was not a job which was as uncertain in hours and as variable in that respect as is the case at bar, but that is a difference which would not support a contrary result if the agreement be one not permitted under the Act, as here.

There is nothing to indicate that President Wilson of employer company, or any official in authority, intended to suggest, or countenance, a violation of the law in respect to a proper observance of the hours and wages requirement, or in failure to pay appropriate overtime to its employees. It should not pass unnoticed, perhaps, that the workmen waited so long to advise the employer that the labor time sheets being regularly sent in did not speak the truth as to the time they were employed. Ordinarily under such circumstances, but for the strict provisions of the Act the purpose of which is to prevent employment under such situations and conditions as the present case presents (which purpose has now been definitely appraised and defined by the U. S. Supreme Court), the principle of estoppel would operate to deny relief and to protect plaintiff in error from the infliction of this double liability, a liability which, if invited, was because of a misunderstanding of the law, recently enacted and not yet clearly interpreted by the Department of Labor or the courts. But contracts covered by this Federal Act, and in violation of or "inconsistent" with its provisions, "are illegal, and not binding upon the employees." Johnson et al. v. Dierks Lumber & Coal Co., supra.

The case of Atlantic Co. v. Walling, Admin., etc., 5 Cir., 131 F.2d 518, 521, cited and relied upon by plaintiff in error, is not in point upon the question decided in the Johnson case, supra, or before us here. There, in the Atlantic Co. case, the question of overtime, beyond that fixed by contract was not, as here, involved. It was there held that the contracts made between employer and workmen, where it provided for "base pay equal to and for overtime pay in excess of that required by the act were valid agreements under, and payment of salaries provided for in, them, was in compliance with the act." The court there noticed that the Missel case, supra, and the case of Warren-Bradshaw Drilling Co. v. Hall, 5 Cir., 124 F.2d 42, were to be distinguished. "In those cases", said the court (referring to the Missel and Hall cases), "there was no agreement for a base pay and for overtime under, and in accordance with, the act." And such is the situation in the case at bar.

At first blush it might appear that because of the irregular and uncertain hours to be employed that the parties could contract in advance for a fair and reasonable computation of average daily hours the work would require. And yet, because of the public policy involved, this cannot be permitted. Circumstances of economic pressure could too easily influence the employee to surrender rights the Act is intended to fairly and fully protect. Neither employer nor employee may contract for an amount that would result in pay less than the minimum specified by statute. Travis v. Ray, D.C., 41 F.Supp. 6. "The statute was passed to protect them (the employees) against the economic pressure it was assumed they would be unable to resist, if offered a job. To this end it was as necessary to deny them the power to bargain away their privilege." U. S. ex rel. Johnson v. Morely Const. Co., 2 Cir., 98 F.2d 781, 788. "At its peril, it (the employer) has to keep track of the amount of overtime worked", and the court is not at liberty to construe the Act, positive in terms, in the light of equities which might appear to us as favoring the employer. George Lawley & Son Corp. v. South, 1 Cir., 140 F.2d 439, 442.

Since there may be no agreement "as to the computation of hours which operates to waive compensation for overtime actually worked" (Skelly Oil Co. v. Jackson, Okl., 148 P.2d 182, 187), the employer here may not rely upon prior estimate of time to be required to perform the labor, simply because it may be inconvenient to keep actual overtime. "The mere fact that a worker's hours * * * fluctuate does not insulate him from the protection of the overtime provisions of the Act." Missel v. Overnight Motor Transp. Co., 126 F.2d 98, 109.

It is suggested that there are some cases where estoppel has been held to apply in situations such as we find here. An examination of the cases, most of which are cited in the dissent herein, discloses as to each of them a clear distinction which the majority believe to be controlling. We do not feel it necessary to set out and no-

tice the situations appearing and questions presented in each of the cases so relied upon. It is sufficient to say that in many of those cases we have clear deception practiced upon the employer, who, it is shown, or indicated by the language of the decisions, would, under the agreement, have been obligated to pay for any time actually employed by the workmen over and above that certified, had he known of the actual time so put in.

And, in none of them do we have a situation such as here, where the employer at all times knew the amount of overtime he was obligated to pay for under the contract and where he likewise knew that each payday the workman was expected to sign the prepared statement of regular hours and overtime employed, always the same. It would have served no purpose for the employer here to have known that the contract by which it and the workmen had arbitrarily and unalterably limited the hours for which overtime would be paid (but not the hours to be put in by the workmen) actually had not allowed for sufficient time and pay.

 If waiver of rights to claim statutory pay, "to accept less than permitted by law", on the part of the employee in advance of employment, or waiver as to back pay, or releases from the employee regardless of the "manner in which they were obtained", whether voluntarily and without coercion or not, will not foreclose the employee in his claim for the statutory time (Fleming, etc. v. Warshawsky & Company,

7 Cir., 123 F.2d 622, 626), how can it be said that any theory of estoppel, as ordinarily applied to contracts, would do so? It is unimportant that there has been no demand for the wages due, or that the employer acted in good faith, or was "in fact ignorant of the overtime" relied upon. Abroe v. Lindsay Bros. Co., 211 Minn. 136, 300 N.W. 457, 458.

Nor do we believe that Interpretative Bulletin No. 13 upon which reliance is placed by the employer, was intended to, or does, cover a situation like this. It means to say merely that where irregular hours of employment are required in such industry, if they are "reasonably computed" as distinguished from being "guessed off" by the parties prior to the performance of the labor, that this may be done, without requiring full pay for all the time that a workman might be available and subject to call.

 Such a rule, or interpretation, can afford employer no comfort here, where a wholly different situation presents itself. This is not a case of "reasonably computing" the hours actually employed by one subject to call at all hours; it is one where the parties have undertaken in advance of the work being done to say how much overtime ought to be allowed, and that so much, and no more, will be paid for, all without restriction as to how much must necessarily be done. The workmen here were required to put in enough time to keep the pumps going and all attendant duties performed. The employer was not concerned with whether the workmen could do

the work in more, or less, time than that for which the parties had stipulated they would be paid.

This Interpretative Bulletin has been before the courts on other occasions and at no time has it been held to mean that the parties may enter into an agreement "as to computation of hours which operates to waive compensation for overtime actually worked"; but it means merely that all the time one is "subject to call" need not be paid for, and that, under such circumstances, the time actually employed may be "reasonably computed". Skelly Oil Co. v. Jackson, supra.

It is suggested that had the employer known that so much additional overtime was being required, he would perhaps have arranged to pay therefor and thus avoid the penalty which attaches for a violation of the law in this respect. There is evidence that the superintendent on the property did have one or more complaints from the workmen that the hours were too long and the work too exacting, if that be important, but it brought no relief. But it is to be noticed that the employer thought he was making a contract that would meet the statutory requirement and he was not thereafter concerned about the hours actually employed. Consistent with this appraisal of the employer's view, we find the workmen received each payday the ready-prepared time sheets showing the same uniform number of hours each week, regular and overtime. There was no suggestion in the agreement which would support any

theory but that the parties had come to an understanding that a certain amount of overtime and schedule of pay was the basis upon which the employer would be willing to employ and the workmen would be willing to work; and the statute here offended against was enacted to avoid this very kind of result.

This liability was invited, doubtless, only because the employer, in undertaking to arrive at what it, and doubtless also the employees in question at the time, thought would be a fair average for regular and overtime hours required to perform the concededly irregular type of work of a pumper in the oil field, misinterpreted the law.

However severe it might appear under the circumstances of this case, double wages must be allowed when it is found that the Act has been violated, we are told by no other authority than the United States Supreme Court (Overnight Motor Co. v. Missel, supra) that this measure of liability is to be applied; and it does not detract from the sting of such exaction to say that it is not a "penalty" or "punishment", but merely "compensation", as that case holds. Plaintiff in error acted in this connection at its peril, as all must who misappraise the law; and liquidated damages, or "double compensation", must follow. Here good faith, or honest mistake of law, is no excuse. "Perplexing as petitioner's problem may have been", says the United States Supreme Court in Overnight Motor Co. v. Missel, supra, "the difficulty does not

warrant shifting the burden to the employee. The wages were specified for him by the statute, * * *. The liquidated damages for failure to pay the minimum wages under sections 6(a) and 7(a) are compensation, not a penalty or punishment by the Government."

All assignments are without merit. Finding no error the judgment is in all things affirmed. And, it is so ordered.

BRICE and LUJAN, JJ., concur.

SADLER, Justice (dissenting).

I cannot agree with the result reached by the prevailing opinion. Without challenging sufficiency of the evidence to sustain the findings or disputing correctness of the conclusion that a bona fide agreement upon fixed number of hours for overtime, between employer and employee (even though the variable nature of hours of employment might suggest the arrangement), cannot be sustained under the Act, if actually the employee puts in more overtime than that agreed upon as a fair estimate for which he is not paid the prescribed rate of pay; nevertheless, the Act does not authorize, nor do the most elemental principles of honesty and fair dealing sanction, its employment to mulct the employer for attorney's fees and liquidated damages, as double pay for the overtime shown on a secret and concealed time record kept over the considerable period here involved and never disclosed to the employer until employment had terminated.

The honesty and good faith of the parties in entering into this arrangement for payment of overtime not only is not questioned by the prevailing opinion, but is conceded. In other words, as the majority concede and the record so abundantly establishes, it was thought to be within the law. However, that the plaintiffs very soon conceived the idea not to abide by it, in the event their overtime exceeded that estimated, is conclusively established by the fact testified to by them, that from the very beginning they began to keep a secret record of their overtime. The purpose seems obvious. If the overtime substantially exceeded that upon which they had agreed as a fair estimate, they could recover not only the rate of pay prescribed by the Act, but double it as liquidated damages plus attorney's fees. On the other hand, if the agreed estimate should exceed actual overtime they would get paid for something they did not earn. Under such circumstances, what did common honesty and fair dealing dictate should be done? Obviously, they called upon the plaintiffs to make known to the defendant that, according to a record being kept by them, the agreed estimate relied upon was being substantially exceeded from payday to payday. Had they so informed the defendant, it could have saved itself double pay for overtime and attorney's fees by paying for the extra overtime as it accrued; or, it could have made an even greater savings by employing extra help at the rate of pay for regular time and thus have greatly reduced overtime, if, indeed, not eliminat-

ing it altogether. This is exactly what the defendant's president testified the company would have done had it been so advised.

Even without supporting authority, the mere statement of the case suggests the plaintiffs' estoppel. However, there is pertinent authority for applying estoppel in cases of this very kind. Mortenson v. Western Light & Telephone Co., D.C., 42 F.Supp. 319; Carter v. Butler, Ga.App., 31 S.E.2d 210; Gale v. Fruehauf Trailer Co., 158 Kan. 30, 145 P.2d 125; Clevenger v. W. M. Ritter Lumber Co., 294 Ky. 764, 172 S.W.2d 625. Cf. Hanzely v. Hooven Letters, Inc., City Ct., 44 N.Y.S.2d 398.

In Mortenson v. Western Light & Telephone Co., supra, the court said [42 F. Supp. 322]:

"While there is no doubt of the sound principle of law that if an employer and employee agree that the wages to be paid were less than those permitted by the Act, it would not be binding as against the employee as the Act is for the general good of society and cannot be defeated by private agreement; yet no court has held, and I do not believe that any court will hold, that an employee can, without permission or knowledge of his employer, make incorrect reports as to his daily services and permit the employer to act as though such reports were honestly made and thereafter take advantage of this situation and claim that the false reports so made can be corrected. All of the elements of an estoppel are present in this case."

In the case at bar, the majority say:

"It would have served no purpose for the employer here to have known that the contract by which it and the workmen had arbitrarily and unalterably limited the hours for which overtime would be paid (but not the hours to be put in by the workmen) actually had not allowed for sufficient time and pay."

The statement that the parties had "arbitrarily and unalterably" limited the hours for which overtime would be paid is unwarranted and impeaches the conceded good faith of the parties in agreeing upon what then seemed to them a fair estimate of overtime, based upon previous experience with an employment whose hours were so fluctuating and variable as to render it almost impossible, as a practical matter, to keep an accurate account of them. Certainly, the record discloses the plaintiffs were unwilling as substantial excess overtime progressively accumulated on their secret records, to test by disclosure whether defendant would treat the estimate as "arbitrarily and unalterably limited" by the agreement or regard it as subject to correction upon a showing that it was in fact based on mistake and error. Good faith is not to be deduced from plaintiffs' conduct in concealing from the employer knowledge of the secret record until the employment had been terminated and all hope of minimizing overtime by the use of extra help or otherwise was gone. On the contrary, such conduct strongly suggests a plan to entrap an employer into

double liability for the overtime and attorney's fees embraced in the judgment which the prevailing opinion affirms.

I am unable to believe the Congress ever intended that the Fair Labor Standards Act should be employed as an instrument of entrapment and oppression. The courts consistently have declined to permit the wholesome and salutary statute of frauds, itself to be transformed into an instrument for perpetuating a fraud. The analogy is strong. In my opinion, the judgment should be reversed.

I dissent.

BICKLEY, J., concurs.

On Motion for Rehearing.

MABRY, Chief Justice.

The appellant, defendant below, in briefs supporting a motion for rehearing, vigorously challenges the correctness of our conclusion that the judgment of the lower court should be affirmed. Careful consideration of the arguments fails to persuade us of error in the result announced or the reasoning advanced in support of it. Nevertheless, there is language in our opinion meriting some clarification, more especially since it was employed arguendo and touched upon a question not appropriately raised below. In the course of our opinion, we said:

"At first blush it might appear that because of the irregular and uncertain hours to be employed that the parties could contract in advance for a fair and reasonable computation of average daily hours the work would require. And yet, because of the public policy involved, this cannot be permitted."

This declaration, it is said, is made in the face of language of the United States Supreme Court in Tennessee C., I. & R. Co. v. Muscoda Local 123, 321 U.S. 590, 64 S.Ct. 698, 705, 88 L.Ed. 949, 152 A.L.R. 1014, the "portal to portal" case, where, after disposing of the review in a manner favorably to the employees in so far as the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., was concerned, the court said of its holding:

"This does not foreclose, of course, reasonable provisions of contract or custom governing the computation of work hours where precisely accurate computation is difficult or impossible."

But, it is to be noticed that there was neither a finding, a request for a finding, nor any ruling invoked below so as to present the question of the difficulty, or impossibility, of precisely accurate computation of overtime, in the case at bar.

Whether, if requested, the trial court would have found that the work hours of appellees were impossible, or so difficult to compute precisely as to sustain reasonable provisions governing computation, and then have held the provisions of the time sheets reasonable in spite of the excess overtime employed above that provided for, we have no way of knowing. It is enough to deny consideration of the question here that at the trial appellant sought to hold appellees

to the language of the time sheets touching overtime as a strict matter of contract which they would, under the circumstances, be estopped to disavow, without reference to the considerations mentioned in the "portal to portal" case. Even in that case, the language seems obiter dictum. Hence, we here express neither approval or disapproval, merely noticing it to say that the record before us does not call for a ruling whether a reasonable contract provision of the kind mentioned would violate the act. The language of our opinion on file, employed arguendo, as we have said, stating such a contract would violate the act, is withdrawn. Otherwise the opinion will stand as written.

The motion for rehearing will be denied.

It is so ordered.

BRICE and LUJAN, JJ., concur.

SADLER and BICKLEY, Justices (dissenting).

In our previous dissent, we did not dispute the correctness of the majority's conclusion, now modified, that a contract of the kind approved by the United States Supreme Court in the language quoted from the opinion in Tennessee C., I. & R. Co. v. Muscoda Local 123, 321 U.S. 590, 64 S.Ct. 698, 88 L. Ed. 949, 152 A.L.R. 1014, would be invalid if the overtime actually worked exceeded that estimated, regardless of the difficulty of computing same. In view of the language quoted from that opinion, however, it now seems that this conclusion of the majority was open to challenge and remains so.

We do not deem the practice question which influences the majority to disregard the suggestion of this quoted language from the United States Supreme Court, as sufficient to require us to disregard it as lending support to the theory of estoppel discussed in our former dissent. The appellees' own testimony corroborates what is otherwise undisputed that the hours of employment were so fluctuating and uncertain as to make it quite impossible, as a practical matter, to accomplish any precise computation thereof. A finding of fact to such effect not only would rest upon abundant support in the evidence but would merely declare what was undisputed therein. We, therefore, should not ignore on the issue of estoppel, with or without a specific finding, what stands out so clearly as an unchallenged fact in explanation of the hours of overtime agreed upon as an approximation, fair and reasonable, in lieu of their exact computation. Tennessee C., I. & R. Co. v. Muscoda Local 123, supra. Certainly, this consideration affords additional support for the estoppel made the basis of our previous dissent.

We think a rehearing should be granted and dissent from the action of the majority in ordering otherwise.