**BLAKELEY v. FRESNO OIL CO., Inc.**

No. 14913.

Court of Civil Appeals of Texas.
Fort Worth.

Feb. 6, 1948.

Britain & Connell, of Wichita Falls, for appellant.

Nelson, Montgomery & Robertson and Gordon Stokes, all of Wichita Falls, for appellee.

SPEER, Justice.

This is a suit by plaintiff, J. Y. Blakeley, against the defendant, Fresno Oil Company, Inc., to recover for alleged unpaid overtime worked by plaintiff for defendant between December 2, 1945 and March 14, 1947, and penalties and attorney's fees under the Fair Labor Standards Act of 1938, 29 U.S.C.A. §§ 201 to 219.

The parties will bear the same designation here as they bore in the trial court.

In so far as is necessary for a proper understanding of the situation before us, we need only to refer briefly to the pleadings. The petition alleges that plaintiff was employed by Mr. Ryan, the superintendent of defendant, as a pumper of twelve "stripper" oil wells on the defendant's five leases in Wichita County, which leases were not contiguous to each other; he lived in a house belonging to defendant on one of the leases and that one lease was approximately two miles from where he lived and another was 5½ miles; that plaintiff was to receive eighty-three and three-fourths cents per hour for a 40 hour week's work and that under the provisions of the Labor Act above cited he was to receive time and a half for all overtime worked each week; that during the 67 weeks covered by his employment he was paid for the 40 hours per week and 2 hours overtime, or 42 hours for each of the 67 weeks. That at the time he was employed he was given a time book and instructed to not report more than 42 hours, including 2 hours overtime in any one week,

and he further alleged that he made such reports and was paid therefor but that in fact he worked many hours overtime, more than he reported and at innumerable times he reported said additional overtime to defendant but payment for such additional overtime was as often refused by defendant. The petition set out in detail the whole number of hours worked each week, giving credit for the number of hours paid, and indicating a certain number of hours overtime each week, and alleged that said overtime for which he had not been paid amounted to 1,218 hours. His prayer was for payment of time and a half for the 1,218 hours overtime, an equal amount as liquidated damages, and for reasonable attorney's fees; each of the three amounts claimed was designated.

Defendant answered by general denial and specially that full payment had been made for all time worked by plaintiff and further that the overtime claimed by plaintiff embraced time consumed by plaintiff in going from his home to the place where his daily work began, his return home for lunch, as well also time consumed in going from his home back to the place where he was to work, and the time consumed in returning from his place of work to his home.

At the conclusion of plaintiff's testimony, as well also at the conclusion of all testimony, defendant moved for an instructed verdict. The grounds for each of these motions for requested verdict will be noted later. Both motions were overruled.

The court submitted special issues to a jury and upon these issues the jury returned its verdict.

Plaintiff moved for judgment on the verdict and prior to any action being taken thereon by the court defendant filed its motion for judgment non obstante veredicto. Plaintiff's motion for judgment on the verdict was overruled and after timely notice and hearing defendant's motion for judgment notwithstanding the verdict was sustained by the court and a take nothing judgment was entered against plaintiff. He has appealed.

Five points of error are presented for reversal. The assigned errors presented in

the brief are lengthy and somewhat argumentative and we shall not attempt to quote them haec verba.

The first point complains because the court refused to enter judgment on the jury verdict and embraces plaintiff's reasons in support of the point, among which it is contended that issues of fact were raised by the testimony and further that the court having submitted such issues to the jury, it was bound by the answers and could not thereafter render judgment non obstante veredicto for defendant.

In the view we take of this appeal, we deem it unnecessary to set out the jury verdict. It is sufficient to say the verdict was in all respects favorable to plaintiff. We also note the jury found more hours of overtime than plaintiff claimed in his petition.

■ We cannot assent to one of the reasons urged by plaintiff as to why the trial court could not disregard the jury verdict after having submitted the special issues to the jury, he being bound by such verdict. Rule 301, Texas Rules of Civil Procedure, provides in effect that the judgment must conform to the pleadings and the verdict, etc., but further provides that "upon motion and reasonable notice the court may render judgment non obstante veredicto if a directed verdict would have been proper, * * *." We shall later discuss whether or not defendant's requested motion for an instructed verdict should have been sustained.

Points two to five, both inclusive, assert error in the acts of the trial court in disregarding the verdict and entering judgment non obstante veredicto. All points apparently go to substantially the same issues in this appeal and we shall not attempt to discuss them separately, nor to quote the points presented, nor the detailed reasons assigned in the motion for instructed verdict nor the motion for judgment non obstante verdicto.

The motion for an instructed verdict, urged at the close of the testimony, contained substantially all of the reasons later presented in the motion for judgment notwithstanding the verdict.

The latter motion asserted, among other things, that there was no evidence of pro-

bative value to raise a jury question on the controlling issues in this case, to wit: (a) That during the time of plaintiff's employment, defendant was engaged in interstate commerce, nor that the plaintiff was so engaged, nor that he was in the production of goods for commerce; (b) That the time claimed by plaintiff as overtime was not spent by him in productive work for defendant, but indisputably showed that such time was spent by him in going from his home to the place where his work was to begin for the day, in returning from the place of work to his home at lunch time, in returning from his home to the place of work after lunch and returning in the afternoon from the place of work to his home; and in addition to these things, in time consumed by him when he was not working for defendant but working for others with whom defendant had no connection.

It is deemed pertinent to first make some references to Title 29 U.S.C.A. §§ 201 to 219, the first section of which provides that the title shall be known as the "Fair Labor Standards Act of 1938." For brevity we shall refer to it as the "Act." Section 207(a) (1) of the Act provides: "No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce * * * for a workweek longer than forty-four hours during the first year from the effective date of this section," and for time and a half for all overtime. Section 203 defines "Commerce" as trade, etc., among the several states, meaning interstate commerce. See Barbe v. Cummins Const. Corporation, D.C., 49 F.Supp. 168, affirmed 4 Cir., 138 F. 2d 667.

■ The courts have held that the obvious purpose of the Act in requiring the employer to pay time and a half for all overtime worked by the employee achieved the dual purpose of inducing the employer to reduce the hours of work and to employ more men and of compensating the employees for the burden of longer hours. That is, to discourage overtime employment and to encourage a greater spread of employment among more laborers. Walling v. Youngerman–Reynolds Hardwood Co., 325

U.S. 419, 65 S.Ct. 1242, 89 L.Ed. 1705; Carleton Screw Products Co. v. Fleming, 126 F.2d 537, Certiorari denied; D. & L. Production Co. v. Cuniff, Tex.Civ.App., 165 S.W.2d 933, error dismissed. The Act is remedial and humanitarian and must be liberally interpreted and not applied grudgingly. Tennessee Coal Iron & R. Co. v. Muscoda Local No. 123, etc., 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949, 152 A.L.R. 1014; Johnson v. Dallas Downtown Development Co., 5 Cir., 132 F.2d 287, Certiorari denied; see also 152 A.L.R. 1014.

■ Other decisions get even closer to the questions involved in this appeal. In Corbett v. Schlumberger Well Surveying Corporation, D.C., 43 F.Supp. 605, and Bracey v. Luray, D.C., 49 F.Supp. 821 (reversed on other grounds 4 Cir., 138 F.2d 8), it was held that under the Act, if an employee worked part time in commerce and part time out, before he can recover for overtime he must show what part of overtime was done in commerce. In Warren–Bradshaw Drilling Co. v. Hall, 317 U.S. 88, 63 S.Ct. 125, 87 L.Ed. 83, it was held that in a suit under this Act for overtime compensation and liquidated damages, the burden of proof is upon the employee to show that he was engaged in production of goods for commerce during the time for which he sues.

In Johnson v. Dierks Lumber & Coal Co., 8 Cir., 130 F.2d 115, and Wilson Oil Co. v. Hardy, 49 N.M. 337, 164 P.2d 209, 162 A.L.R. 292, and Martin v. Graham Ship-By-Truck Co., Mo.App., 176 S.W.2d 842, 846, it was held that in an action for overtime and liquidated damages under this Act the burden of proof is upon the employee to show by a preponderance of the evidence, "the number of hours worked and the amount of wages due; and the evidence to sustain this burden must be definite and certain." Likewise in Philpott v. Standard Oil Co., D.C., 53 F.Supp. 833, it was held that where this burden is imposed upon the employee and the evidence relied upon is indefinite and uncertain as to the overtime to which he is entitled, the court cannot speculate or guess what time he might be entitled to.

Bearing in mind the foregoing rules, principles and pronouncements, it becomes our duty to determine, if we can, what are the legal rights of the respective parties to this suit.

■ We shall not undertake to do more than give a general résumé of the testimony bearing upon the points at issue; in doing so we must consider the testimony in its most favorable light to plaintiff. There is a large volume of transcribed evidence taken at the trial and such as we shall refer to will be principally that offered by plaintiff, including his own testimony, but for brevity will paraphrase questions and answers.

Referable to the nature of trade and business of defendant and that of the work of plaintiff during the time involved here, plaintiff called as a witness a Mr. Roye, who, in substance, testified that: I am pipeline superintendent of Belle Oil and Refining Co., and have been such for the last four and a half years; my company buys oil from the defendant produced on its leases in the Burkburnett area; we buy from several producers in that area; my company has a pipeline adjacent to defendant's oil tanks and its oil is run into our collecting system; I do not know of any other oil company buying oil from any of these leases; when oil is run from defendant's tanks into our lines with the oil of other concerns, it is pumped to our storage and of course any particular oil then loses its identity; my company has a refinery at Grandfield, Oklahoma, it has an estimated capacity of 5,000 barrels per day; we manufacture gasoline and burning oil and ship parts of it back to Texas. When the refinery needs oil it is pumped from our storage to Grandfield, but the refinery does not use all we have in storage and parts of it are sold to LaSalle Refining Company and parts to Stanolind Oil Company. I do not know what those two companies do with it. I am sure that some parts of the oil we get from defendant go to our refinery. I could not tell just now where any part of the oil purchased from defendant went on any particular day except today (July 17, 1947), it is going to Stanolind.

We note from this witness' testimony that all his purchases from defendant are placed in the present tense, some three and a half months after plaintiff ceased work for defendant. No effort was made at the trial to have the witness' transactions cover any part of the time plaintiff was employed by defendant. Neither the trial court nor this court can read into the testimony something that is not there, to enable a party to make out a case or defense.

Let us notice the testimony of plaintiff in the same manner as that of the last named witness. He testified, in substance, that: He was employed by Mr. Ryan, defendant's superintendent, in the presence of Mr. White, the Secretary-Treasurer of defendant, to take charge of defendant's five leases in the capacity of pumper on December 2, 1945 and continued to work in that capacity until March 14, 1947, when he was discharged; his wage was to be eighty-three and three-quarter cents per hour, seven days a week; when he was employed he was given a time book and instructed to report his time to the company at 42 hours a week and submit his time report every other Saturday showing the number of hours worked the preceding two weeks; he must not report more than the 42 hours per week; he was told to buy such supplies as were necessary and have them charged to defendant; he was told to hire additional help any time he needed it and to report the time of the extra help, along with his own, and it would be paid. He did buy supplies and hired extra help when needed and all were paid for by defendant. He lived in a house on one of the leases and each morning when he heard the whistle of a 7 o'clock train he started to work; usually he left the house and walked 100 yards to the pump house on that lease where his first work was to be done; it took him approximately five minutes to walk from home to the pump house; he spent some time there inspecting, greasing and correcting anything necessary with the power; he made his rounds of the wells, describing many duties to be performed as he visited the various wells and pump stations on that and other leases; there was always plenty to do; it was a full 24 hours work to do his job, since he was responsible for looking after the lease and operating it in the most efficient manner to obtain the best results; wherever he happened to be on a lease, if the work he was doing could wait, he went back home to lunch; ate his lunch and returned to such place on one or the other of the leases where he was most needed; he continued in the afternoon and wherever he finished his work he walked back home. At various times in his testimony he said he included in his suit for overtime all the time consumed from the time he left home until he returned in the afternoon except while he was eating lunch; as often, however, he said he just included such time as he was "absolutely" at work on one of the leases; he was on the job all the time. One of the leases was two miles from his home, but he did not visit it every day, it only pumped one day in the week; another lease was five and a half miles from his home and he had to visit it often, sometimes two or three times a day, and averaged going from his home to that lease once each day; there was a paved road from his home to within one and a half miles of that lease and when the weather was good he could drive all the way and it would require approximately an hour each day to drive from his home to that lease and back; when it was rainy weather he had to stop his car on the highway and walk the mile and half and the same distance back, and on these occasions (he would not estimate how often) it required about five hours to travel from his home to that lease and back; the time reported by him to defendant covered all the time he worked; "no," the report did not show all the time he worked; he worked a lot of overtime, and the reason he did not report it was because Mr. Ryan told him not to report but 42 hours a week, that defendant would not pay him for any more time than that; on the first day he began work he started to keeping a private memorandum of overtime; he would tell his wife at night how many hours he had worked and at his direction she wrote it down on a calendar; he made some of the entries on calendars and they both later transcribed the time onto a book. (That private book was in evidence showing from one to 67 hours overtime for each week except the last week when there was no overtime charged.) By calculation from his book

entries, he had worked 1,218 hours overtime for which he had not been paid. He further testified that at one time during his employment (date not shown) he asked Mr. White to allow him more hours because he could not do the work in the time they were allowing him; White said he would see about it but later refused to allow any more time; when he was hired he was told he could not work more than 42 hours a week; he could hire, at the defendant's expense additional help if he needed it; he continued to keep his private book of overtime for each week after White had declined to give him more hours. He used defendant's machine and pulled rods from two wells for other persons with whom defendant had no connection; it required six hours to pull the rods and he received $13 for doing the work; from this he paid two men to help him at sixty-five cents an hour and retained the remainder of what he had received, he thought he had a right to do it; he charged the six hours into his time of work for defendant. He said there were times when he had been drinking while at work but was never intoxicated so that he could not perform his duties; he testified by deposition that he supposed he was fired for drinking but said on the witness stand he did not remember saying that; he guessed they fired him because he wanted more hours for the job.

We have made this long statement concerning the testimony principally to show its indefiniteness and uncertainty on the essential facts necessary to be established in a case of this character.

■■ We have already shown it to be the rule that to recover under the Act above cited an employee must show by a preponderance of the evidence that his employer was engaged in interstate commerce during the period of time for which he sues. The evidence pointed out above does not show that defendant was in commerce at any time while plaintiff worked for it, and consequently he was not in production for commerce. At least the testimony is silent in this respect unless the trial court should place such a construction upon it as to mean something not said.

Then too, plaintiff's testimony is far from showing how much compensable time he worked over the 42 hours per week for which he was paid, and the amount of wages due him for such overtime, with definiteness and certainty. Johnson v. Dierks Lumber & Coal Co., 8 Cir., 130 F.2d 115. In such circumstances the court nor jury can speculate or guess as to what time he is entitled to recover for. Philpott v. Standard Oil Co., D.C., 53 F.Supp. 833.

■ This record also reflects that defendant advised plaintiff when he was employed and told to report his time at 42 hours per week and no more, it was well within its rights if not in direct obedience to the spirit of the Fair Labor Standards Act and the purposes for which it was enacted, that is to avoid long overtime work hours and to spread the labor over more workmen. Walling v. Youngerman–Reynolds Hardwood Co., supra. In keeping with this purpose plaintiff was told to hire additional laborers to help him when needed and to bill the defendant for their time; plaintiff did this. In Kappler v. Republic Pictures Corporation, D.C., 59 F.Supp. 112; affirmed 151 Fed.2d 543, 162 A.L.R. 228, it was held that where an employee was advised at the time of his employment he was to work no overtime without the consent of the manager he could not recover under this Act unless the manager had knowledge that he was working overtime. An employer is within his rights under the Act when he establishes a policy among his employees that no overtime work would be allowed. Jackson v. Derby Oil Co., 157 Kan. 53, 139 P.2d 146. Voluntary overtime work does not fall within the Act. Martin v. Graham Ship-By-Truck Co., Mo. App., 176 S.W.2d 842. The general rule in this state is that if services were voluntarily rendered by one without any contract and in the absence of any circumstances from which a promise to pay will be implied, the person who rendered the service is not entitled to compensation. 45 Tex.Jur. 311, sec. 4. In Thompson v. Loring Oil Co., D.C., 50 F.Supp. 213, it was held that an oil well pumper responsible full 24 hours for the care of the lease and subject to call at any hour if anything goes wrong may

not determine overtime by the full 24 hours but only by hours actually worked.

When, as in the instant case an employee's work began and ended at the place of performance he is not entitled to overtime consumed in going to and from his home. Walling v. Mid-Continent Pipe Line Co., 10 Cir., 143 F.2d 308.

It is quite obvious to us that many hours were consumed during plaintiff's period of employment in going to and from his home to the places where he said he went to work and returning to his home from places where he said he ended his work for the lunch hour or where he ended his afternoon work and went home. Certainly his testimony in these respects is not definite and specific that such time was not included by him. He was not entitled to claim such time in arriving at overtime. There is no similarity in this rule and that in which "portal to portal" time is allowed to employees, such as is discussed in Jewell Ridge Coal Corporation v. Local No. 6167, United Mine Workers of America, 325 U.S. 161, 65 S.Ct. 1063, 89 L.Ed. 1534.

Our conclusions are that it would have been proper for the trial court to have given the defendant's requested instruction for verdict; not having done so, it was proper to sustain the motion for judgment notwithstanding the verdict and enter his judgment accordingly. The judgment as entered should be and is affirmed.