The foregoing embodies the court's order. No settlement is required.

**W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**WILLIAM H. LaDEW OF LOUISIANA, INC., a corporation, Defendant.**

**Civ. A. No. 66–790.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Feb. 7, 1968.

Murray A. Battles, U. S. Dept. of Labor, Atlanta, Ga., for plaintiff.

744

Iddo Pittman, Hammond, La., for defendant.

CASSIBRY, District Judge:

This action was brought by the United States Secretary of Labor to enjoin the defendant from violating the provisions of Sections 15(a) (2) (overtime), and 15(a) (5) (recordkeeping) of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201, et seq.) (Act), and to restrain the withholding of overtime compensation due the employees named in Exhibit "A" to the Complaint, as amended.

The defendant's answer was a general denial of the Complaint.

The defendant is a fully owned subsidiary of William H. LaDew, Inc., Dallas, Texas, and is engaged in installation of sprinkler systems. During the pertinent period, a substantial number of the sprinkler installations were made for businesses engaged in commerce and in the production of goods for commerce. Defendant concedes that it is, and was at all times material, an enterprise within the meaning of Section 3(r) and 3(s) (4) of the Act, prior to the effective date of the Fair Labor Standards Act amendments of 1966.

There were a number of crews working out of the Hammond, Louisiana, branch establishment at various construction sites in Mississippi and Louisiana. These crews were made up of a foreman and two or more workers.

A foreman of a crew had to be a journeyman but the crew member could be a journeyman or an apprentice. It is undisputed that the foreman kept the crew members' time for each pay period and turned the hours in to the Hammond office at the end of the week. Some of the time the crew members signed their time slips in blank and on occasion would sign several blanks for convenience and future use of the foreman in turning in the hours worked during the week.

In the greater majority of the material weeks, the foreman reduced by one half the hours worked in excess of forty. There was testimony by David M. Thames, a former foreman, and Fred Morris, present foreman, with defendant corporation, that on isolated and sporadic occasions double time was actually paid for Saturday and Sunday work. Saturday and Sunday double time pay was required by the contract then in effect between defendant and the United Sprinkler Fitters and Apprentices Local No. 669, Washington, D. C., (Union). All of the former and present employees who testified at the trial supported the testimony of the two foremen that their hours were reduced by one half and paid for at double time.

During the pertinent period Claude Ladner, General Superintendent, hired most of the employees and had actual knowledge that the overtime hours were being reduced by one half. There is no testimony that Porter Bentley, General Manager, had actual knowledge of the falsification of the hourly records turned in by the foremen. Claude Ladner remains with the defendant corporation in the capacity of General Superintendent. It is not disputed that during this time the workers voluntarily worked the overtime at straight time rates since it was understood by all concerned that the company would not pay overtime. It was further established that the employees were not required to work any overtime.

All the former and present employees of defendant corporation were members of the Union. It maintained no local office in the Hammond area. Neither were the employees represented by a union steward, business manager, or local representative. The only apparent representation was the election of one of the local members to attend a union convention every year. Conversely, there appeared to be no evidence that the members made any complaint about being paid straight time by the defendant corporation or that the Union had knowledge that its members working for defendant were being paid in violation of the collective bargaining agreement.

The evidence further establishes that the defendant corporation in Hammond, Louisiana, was investigated by Wage and Hour Division, U. S. Department of Labor in 1956 and three office employees were paid back wages. In 1955 and 1956, the home office in Dallas was investigated and back wages for underpayments of overtime were made to engineers. There is no evidence that the installation crews were subject to a Wage and Hour investigation prior to the instant investigation.

The evidence further establishes that the employees' individual earnings showed the total number of overtime hours recorded by the foremen and the total gross amount of compensation paid to the employees. Mr. John C. Davis, Wage and Hour investigator, testified that he doubled the overtime hours shown on the employees' individual earnings record and multiplied such overtime hours by one half the employee's regular rate which would give an accurate determination of the amount of back wage underpayments due the employees—assuming, of course, that no amount of the overtime worked was paid for at double time rate. Davis did not compute back wages from the daily time records introduced as an exhibit by the defendant corporation, as these were not furnished him during the investigation.

## I. EMPLOYEES CANNOT WAIVE THEIR STATUTORY RIGHTS.

■ There can be no denial that the evidence establishes that all the employees agreed to work the overtime hours for straight time pay. However, it is settled that statutory rights conferred on a private party but affecting the public interest may not be waived or released if such waiver or release contravenes the statutory policy. As stated by the Court in Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 705, 65 S.Ct. 895, 901, 89 L.Ed. 1296,

"Where a private right is granted in the public interest to effectuate a legislative policy, waiver of a right so charged or colored with the public interest will not be allowed where it

would thwart the legislative policy which it was designed to effectuate. With respect to private rights created by a federal statute, such as § 16(b), the question of whether the statutory right may be waived depends upon the intention of Congress as manifested in the particular statute."

■ In that case the action was brought under Section 16 of the Act by an individual employee. In this case the reasoning in the *O'Neil* case is much more forceful in that this action is brought under Section 17 of the Act by the Secretary to enforce a right in the public interest. An employee cannot contract with an employer to accept wage payments which do not conform to the Fair Labor Standards requirements. Wood v. Meier, 218 F.2d 419 (C.A.5, 1955). In the *Meier* case the employees agreed to accept less than the minimum requirements for their employment. The District Court held that the parties had entered into a legitimate contract and refused to order recovery. The Circuit Court reversed using the following language,

"We agree with appellants that the claim which they have asserted is not contractual, but statutory. If it were contractual, they would have no claim, since they were paid all that they contracted to receive. The obligation of the employers under the statute is several, and their taking of a judgment against one does not bar their action against the others. It is the public policy of the statute that is to be served. The Fair Labor Standards Act gives substantial rights to employees that did not exist at common law. Claims by employees for minimum and overtime wages, liquidated damages, and attorney's fees, based solely on the provisions of the Act, are not contractual or common law rights, but arise under a statute enacted by the Congress in the interest of commerce, under the plenary and paramount power granted to it by the commerce clause of the constitution of the United

States. The Act concerns itself with the correction of evils through remedies which were unknown to the common law."

The Court in Handler v. Thrasher, 191 F.2d 120 (C.A.10, 1951), met an analogous situation with the following statement:

"It is true, as appellant suggests, that the employee agreed not to work more than eight hours a day, or to claim compensation in excess of forty hours a week. But it is too well settled to admit of discussion that a contract which has for its purpose, or which has the effect of circumventing or invading the command of the Wage and Hour Act, is invalid and unenforceable. See Johnson v. Dierks Lumber & Coal Co., 8 Cir., 130 F.2d 115; United States ex rel. Johnson v. Morley Construction Co., 2 Cir., 98 F.2d 781; Fleming v. Warshawsky & Co., 7 Cir., 123 F.2d 622; Wilson Oil Co. v. Hardy, 49 N.M. 337, 164 P.2d 209, 162 A.L.R. 292; Simmons v. Rudolph Knitting Mills, 37 N.Y.S.2d 422."

## II. MONETARY AMOUNTS DUE

The evidence is clear that all overtime hours in excess of forty in a work week were compensated at a straight time hourly rate except in isolated instances when double time was actually paid.

Based on the evidence the underpayments may be computed with arithmetical certainty except for sporadic instances of double time payment for overtime hours. For example, in a given week when an employee's earning records show forty one and one half hours it was assumed by the investigator, based on his knowledge of the systematic reduction of overtime hours that the employee actually worked forty three hours that week. Since the employee was in fact paid straight time for overtime hours in excess of forty, the hour and one-half not recorded was added to the one and one-half recorded hour and multiplied by one-half times the employee's hourly rate to find the amount required by Section 7 of the Act. Each weekly amount was computed by the same method and totaled to give the amount claimed due each employee. This method does not take into account the hours the employees were in fact paid double time under their agreement with the Union. Obviously, overtime paid pursuant to a collective bargaining agreement in one week cannot be offset against overtime worked in any other pay period, and defendant made no such claim.

■■ The plaintiff has preponderated in his proof that the amount claimed in Exhibit "A" to the Complaint, as amended, is due the specified employees, and those amounts will be ordered paid.

In any event, the defendant has failed to sustain its burden of proof as recognized in earlier decisions under the Act.

"When the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records. But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises. The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. *Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act.* In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's

evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." Anderson v. Mt. Clemens Pottery Company, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515. (Emphasis added)

While the latter case dealt with private rights under the law, the gravamen of its holding has been applied in actions brought by the Secretary. Mitchell v. Riley, 296 F.2d 614 (5th Cir. 1961); Mitchell v. Mitchell Truck Line, Inc., 286 F.2d 721 (5th Cir. 1961). The latter case enlarges upon the Supreme Court's holdings in Mt. Clemens that, "Such a result would place a premium on an employer's failure to keep proper records * * * allow[ing] the employer to keep the benefits of an employee's labors * * *." and that in such cases, "the damage is therefore certain. The uncertainty lies only in the amount of damages arising from the statutory violations by the employer."

## III. THE EVIDENCE IN THIS CASE DOES NOT REQUIRE THE ISSUANCE OF AN INJUNCTION

■ The evidence in this case does not establish that the defendant deliberately and willfully violated the Act. Our courts require the issuance of an injunction "when an employer has committed a clear violation of the Act without valid excuse or explanation * * *" Goldberg v. Cockrell, 303 F.2d 811 at 813 (C.A.5, 1962); Goldberg v. Mathews, 303 F.2d 814, 817 (C.A.5 1962).

■ The factors to be considered in determining the appropriateness of injunctive relief have long been clear from the decisions of the Fifth Circuit Court of Appeals. Mitchell v. Hodges Contracting Co., 238 F.2d 380 (C.A.5, 1965); Mitchell v. Blanchard, 272 F.2d 574 (C.A. 5, 1959). In *Hodges* the Court set forth the factors to be considered in the determination of whether an injunction should

issue. These are, " * * * the employer's previous actions of non-compliance or litigation, the moral and business responsibility of the employer, the extent of which promises of future compliance are something more than empty, idle words unmatched by the institution of effectual corrective procedures, or are undependable contritions under pressure of legal action, whether litigious contention is the legitimate good faith quest for legal determination or the mere pretense, for past or future actions, to thwart effective compliance * * *."

■ It is true defendant was previously found to have been in violation of the statute, but that violation occurred some 12 years ago and is therefore too remote to constitute a practice or to indicate a clear intent to continue violating the law.

■ As to the instant violations, there was no evidence top management was aware of these transgressions. They occurred at places remote from management's immediate view and supervision. The overtime was worked voluntarily, and the illegal arrangement was between employees and supervisors, all of whom belonged to the Union. This conduct not only violated the law, but the collective bargaining agreement of which they were all aware. As I have already held, this does not absolve the defendant of his obligation to pay the overtime required by law, but it does indicate that rather than being a carefully executed plan by an employer to violate the law, it was more likely an independent agreement and device concocted among the men on the job, including the supervisor, to earn a little more money.

In any event, the Court believes this employer when he says that he did not have knowledge of the violations and that he will see that such violations do not occur in the future.

The plaintiff's request that an injunction issue will be denied.