**DIRECTOR OF the BUREAU OF
LABOR STANDARDS**

v.

**Kenneth CORMIER, et al.**

Supreme Judicial Court of Maine.

Argued March 4, 1987.

Decided June 24, 1987.

James E. Tierney, Atty. Gen., Leanne Robbin (orally), Asst. Atty. Gen., Augusta, for plaintiff.

Peter H. Jacobs (orally), Peter Culley, Gregory D. Woodworth, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, for defendants.

Before McKUSICK, C.J., NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

ROBERTS, Justice.

Kenneth Cormier and various corporate and partnership entities comprising what is popularly known as "Funtown USA" appeal from a judgment entered by the Superior Court, Kennebec County, requiring those entities to pay overtime wages, damages and fines to certain employees and to the State for the years 1982 and 1983. Numerous employees had worked an aggregate of more than forty hours in one week for two or more of the entities at Funtown but were compensated by each entity separately, at regular wage rates. The Superior Court determined that the defendant entities were in fact a single employer for purposes of enforcing Maine's wage and hour law, 26 M.R.S.A. § 664 (Supp.1986).[1] The Superior Court reasoned that because the defendants were in fact one "employer," the employees were enti-

---

1. Section 664 reads in pertinent part:
   By reason of the declaration of policy set forth in section 661 and in the protection of the industry or business and in the enhancement of public interest, health, safety and welfare, it is declared unlawful for any employer ... to require any employee to work more than 40 hours in one week, unless 1½ times the regular hourly rate is paid for all work done over 40 hours in any one week....

tled to overtime wages if their hours totalled in excess of forty in one week even if those hours were divided between two entities and the employees never worked over forty hours in one week for any one entity. The defendants contend on appeal 1) that the court erred in applying a "joint employer" test to determine a violation of section 664 and 2) that under section 664 an employer must pay an employee overtime wages only if the employer "requires," in the sense of compulsion, the employee to work those overtime hours. On his appeal, the Director of the Bureau of Labor Standards challenges the portion of the court's order declining to find one of the named defendants, Lucre, Inc., a "joint employer" in conjunction with the other defendants for purposes of enforcing section 664. For the reasons hereinafter set forth we vacate the judgment with respect to Lucre, Inc. and affirm the judgment as to the remaining defendants.

I.

The underlying facts in this case are not in dispute. "Funtown USA" is an amusement park located in Saco. There is no corporate entity known as Funtown USA. Rather, Funtown USA is a collection of corporate and partnership entities that run various aspects of the amusement park. This case concerns those entities owned, controlled or in some way directed by members of the Cormier family. In 1982 and 1983 employees working for the Cormier-related corporations and partnerships worked in excess of forty hours for two or more of those entities. They did not, however, receive overtime compensation unless they worked in excess of forty hours for just *one* entity. Thus, an employee who in one week would work 27¾ hours for Red Baron and 23¾ hours for Dalcor received wages for 51½ hours of work at a regular rate of pay instead of 40 hours of regular pay and 11½ hours of overtime (1½ times the regular rate). The director, after discovering these apparent violations following an audit, filed suit against the various Cormier-related entities. The director

sought to enjoin the entities from continuing this practice as well as seeking fines, damages and the payment of overtime due numerous employees for the years 1982 and 1983. The corporate and partnership relationships among and between the Cormier-related enterprises are set forth in a diagram in an appendix to this opinion.

At trial, the director introduced documents and elicited testimony that established the factual basis of its claim with respect to overtime hours worked at two or more of the defendant-entities and the intertwined relationships among those entities. The defense case centered on establishing that the various entities were all duly constituted for legitimate business and family reasons and that they were not sham or shell corporations. The defense also elicited testimony from the Cormiers tending to establish that no employee was ever compelled or forced to work overtime.

The director brought out at trial that Kenneth Cormier and corporations he was involved with had been subject to prior investigations by the Bureau of Labor Standards and had paid back-overtime to employees in a factually similar situation in 1980. In that case the two corporations, Dalcor and Ken-Ted,[2] were effectively controlled by Kenneth and Violet Cormier. It was Kenneth Cormier's understanding at that time that assessments were levied on the two corporations because of that joint ownership. Thus, it is still Kenneth Cormier's position that employees who work for both Baseball, Inc. and Dalcor, Inc. in a single week are to be paid overtime if their combined employment time for both entities exceeds forty hours. Consistent with this view, the appellants concede that the violations involving Baseball and Dalcor are not at issue on appeal. The defendants contend, however, that actual legal control over an entity is necessary to establish joint employer status. Hence, because Astrosphere, Inc. is effectively owned by William Cormier, and Red Baron Amusement, Inc. is effectively owned by Kevin Cormier, employees who, for example, work 20 hours for Red Baron and 30 hours for

2. Ken-Ted is now dissolved.

Dalcor in a single week are not paid over-time wages.

Following a bench trial the court ordered the defendants to pay the employees $972.35 in back overtime and $972.35 in liquidated damages. The court also ordered civil penalties to be paid to the State in accord with 26 M.R.S.A. § 671 (1974) in the amount of $4725 (63 violations of section 664 assessed at $75 per violation).

## II.

The defendants first contend that the court failed to apply the correct legal standard in determining the status of the Cormier-related enterprises. They argue that the court erred when it undertook a balancing process to decide whether the defendants were joint employers for purposes related to enforcing section 664. The defendants do not contest the factual findings utilized by the court in its balancing. Rather, the defendants contend that Maine law does not contemplate or permit any such balancing, that the "joint employer" concept is foreign to Maine law, and is not set forth or described in any state statute. The defendants argue that once it is established that the entities are legally distinct and not shams, the inquiry should end.

The court considered the following factors as tending to establish joint employer status: 1) Kenneth Cormier and the corporation he and his wife control, Dalcor, exercise overall direction and control of the Funtown USA operation which includes all the other business entities at issue; 2) hiring and payment of employees is coordinated in one central office which, when necessary, also advertises jobs, provides initial screening of job applicants, and conducts orientation for applicants after they are hired; 3) all entities operate within the same defined piece of real estate, for the same general purpose—amusements—under the single overall name Funtown USA; and 4) most entities have some interlocking

financial relationships that result, or have resulted, in some providing other guarantees to aid financing and that resulted, in the 1982–1983 period at issue, in the entities controlled by the sons receiving indirect subsidies for the land use and other overhead costs from Dalcor.

The court also considered several factors tending to support the view that the Funtown USA defendants were not joint employers for purposes of enforcing section 664; 1) hiring generally is done by those individuals who control the entity for which the work is to be performed; and, in addition, employees punch time cards for and are separately paid by each entity for which they work; 2) the separate entities are, in fact, separately owned and controlled and are not sham operations all controlled, in reality, by Kenneth Cormier and Dalcor; and 3) the separate entities of the Cormier family operate within the park along with other entities owned and controlled completely outside the Cormier family. After balancing these factors, the court concluded that the Cormier-related enterprises acted as one employer for the purposes of enforcing section 664.

The term "employer" is not defined in the relevant state statutory provisions. See 26 M.R.S.A. §§ 661–672 (1974 and Pamph.1986). Recognizing this, the court analyzed the economic realities of the interlocking Funtown USA entities, and determined that although they were legitimate, separate, legal entities, they were so interrelated as to be, in effect, one employer under section 664.

The court, in fashioning its joint employer analysis, referred to the federal Fair Labor Standards Act (FLSA), 29 U.S.C.A. §§ 201–19 (1978 & Supp.1987), in particular section 203(d) which defines the term "employer"[3] and section 207 which sets forth in detail the federal maximum hour and overtime wage law.[4] Cases interpreting

---

**3.** Section 203(d) defines "employer" as follows: "Employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an

employer) or anyone acting in the capacity of officer or agent of such labor organization.

**4.** Amusements, like that operated at Funtown, are under certain conditions exempt from complying with sections 206 (minimum wages) and

these sections of the FLSA uniformly recognize that the economic reality and the totality of the factual circumstances in a particular case must guide a court's determination of the employers' status rather than formalistic labels or common law notions of employment relationships. *See, e.g., Donovan v. Agnew*, 712 F.2d 1509, 1510 (1st Cir.1983) (interpreting term "employer" in context of minimum wage and overtime hours enforcement action); *Donovan v. Sabine Irrigation Co., Inc.*, 695 F.2d 190, 194 (5th Cir.), cert. denied, 463 U.S. 1207, 103 S.Ct. 3537, 77 L.Ed.2d 1387 (1983) (interpreting term "employer" in context of minimum wage enforcement action). While in no way bound by these cases, federal law does provide some useful guidance in formulating a coherent state law concept of "employer" for purposes of enforcing section 664. The trial court therefore committed no error in examining the economic realities of the Cormier-related corporate and partnership entities and determining based on that examination that those entities acted as one employer for purposes of enforcing section 664. We find particularly compelling the fact that Dalcor exercises, in effect, overall operational and administrative direction over the other Funtown USA defendants through its centralized management functions. The court's balancing of the several factors that resulted in its ultimate conclusion was a logical, coherent and legally sufficient mode of analysis.

Moreover, to interpret section 664 in this manner is consistent with the overall remedial nature of the minimum wage and overtime laws. Section 661 states that:

> It is the declared public policy of the State of Maine that workers employed in any occupation should receive wages sufficient to provide adequate maintenance and to protect their health, and to be fairly commensurate with the value of the services rendered.

Remedial statutes should be liberally construed to further the beneficent purposes for which they are enacted. *See, e.g., Brooks v. Smith*, 356 A.2d 723, 729 (Me.

207 (maximum hours) of the FLSA. *See* 29

1976). The Superior Court's application of the term "employer" in section 664 to the several Cormier-related Funtown USA entities engaged in the business of operating that amusement park effectuates the remedial purposes of that statute.

### III.

Section 664 states that it is unlawful for any employer "to require any employee to work" in excess of 40 hours in one week unless the employee is paid 1½ times the regular rate for hours worked over 40. With respect to the statute's reference to the term "require" and the degree or type of proof that the director must present, the trial court ruled that

> No compulsion need be proven. Considering the subtle pressures that may exist when an employee is asked to work overtime, imposition of such a proof of compulsion requirement would seriously undermine the purpose of the overtime law.

The defendants contend that the employees who worked overtime in the 1982–1983 period did so voluntarily and without compulsion. They argue that the Superior Court erred when it ruled that the director did not have to prove that the various defendants overtly compelled their employees to work overtime. In the defendants' view, the term require must be given its plain meaning, *i.e.*, to compel.

The director, in support of the judgment, argues that any proof of compulsion inferred from the term "require" in section 664 is implicitly and automatically satisfied by virtue of the inherently coercive employment setting and that overt physical or mental compulsion need not be proven. The director contends that if a proof of overt compulsion requirement is read into section 664, the wage and hour laws would be effectively rendered unenforceable.

The legislative history underlying the present statute is scanty with respect to this issue other than to indicate that a general remedial purpose of the time-and-a-half provision is to create more jobs by encouraging employers to hire additional employees to work the extra hours, rather

U.S.C.A. § 213(a)(3) (Supp.1987).

than to use the same pool of employees to work overtime. To the extent the time-and-a-half provision is designed to penalize employers for failing to hire extra employees to work the extra hours, the term require cannot reasonably be read as containing a proof of overt compulsion requirement. Rather, assuming such a purpose, the payment of overtime wages for hours worked over 40 should be automatic.

The defendants argue, however, that the legislative history and intent is silent on the specific question of how to interpret the term "require" in section 664. Absent any legislative intent to the contrary, and unless such a construction would lead to an absurd result, the defendants contend that the statute must be construed in accordance with its plain meaning. Viewed in the context of the wage and hour statute as a whole, however, and keeping in mind its remedial purposes, the plain meaning of the term require in section 664 cannot reasonably include a compulsion component.

"In interpreting a statute courts must presume that the Legislature did not intend unreasonable or absurd consequences, nor results inimical to the public interest." *Schwanda v. Bonney*, 418 A.2d 163, 166 (Me.1980). Moreover, the terms of a statute "must be given a meaning consistent with the overall statutory context, and be construed in the light of the subject matter, the purpose of the statute, the occasion and necessity for the law, and the consequences of a particular interpretation." *Finks v. Maine State Highway Comm'n*, 328 A.2d 791, 798 (Me.1974).

■ Funtown USA employees did not set or control their own hours, but rather, were "assigned" or "asked" to work overtime when it was needed. In the context of this employee-employer relationship, to assign an employee to work in excess of 40 hours in one week is tantamount to requiring that employee to work those extra hours. Indeed, the various Cormier-related entities shared this view in certain contexts

since they regularly paid overtime to employees who worked over forty hours for one entity, regardless of whether the employee had previously requested that extra work. We therefore agree with the trial court that to require proof of overt compulsion would seriously undermine the underlying remedial purposes of the overtime law expressed in section 664.

### IV.

■ The director challenges [5] that portion of the trial court's order declining to find Lucre, Inc. (a rollercoaster ride) a joint employer along with the other Cormier-related Funtown USA entities. The trial court found that Lucre, Inc. was not "sufficiently related" to the other employers. Specifically, the court determined that Lucre, Inc. is a corporation composed of a number of independent investors and that these investors finance and operate the rollercoaster. The court concluded that Lucre, Inc. "has less attributes of close relationship than other parts of the family enterprises." A determination of joint employer status is based on an evaluation of facts adduced at trial, and we will not disturb the Superior Court's factual findings unless they are clearly erroneous. *See Harmon v. Emerson*, 425 A.2d 978, 981–82 (Me.1981). The ultimate question of whether certain employers are in fact "joint" is, however, a legal issue and is reviewed for legal error. *See, e.g., Patel v. Wargo*, 803 F.2d 632, 634 n. 1 (11th Cir. 1986); *Karr v. Strong Detective Agency, Inc.*, 787 F.2d 1205, 1206–1207 (7th Cir. 1986).

Lucre, Inc. was established by an investment club interested in maintaining and operating a rollercoaster ride at Funtown USA. There were 25 investors, each with a four percent share. Eighty-eight percent of all shares were owned independently of any Cormier family involvement. Lucre, Inc. arranged for its own separate accounting services, apart from the other Cormier-related entities.

---

5. The director styled his appeal of the Superior Court's decision with respect to Lucre, Inc. as a "Cross-appeal." Because Lucre, Inc. is not a party to this appeal, the director's designation is incorrect. Because no party has objected to this procedural irregularity and because the appeal is otherwise timely we treat the "cross-appeal" as a M.R.Civ.P. 73(a) appeal by an "other party."

Other facts adduced at trial revealed that Dalcor manages Lucre's daily operations and that Lucre's payroll and personnel functions are handled through Dalcor's central office to the same extent as those functions are handled by Dalcor for the other defendants.

The Superior Court hinged its decision with respect to Lucre, Inc. on the fact that ownership was widely dispersed. The only other evidence in the record tending to establish Lucre, Inc.'s "separateness" is the fact that it retains independent accounting services. While dispersed ownership and separate accounting services are factors that may properly be considered in evaluating joint employer status, they are not sufficient as a matter of law to distinguish Lucre, Inc. from the other defendant entities.

As the record demonstrates, Lucre, Inc. is operationally integrated with the other Cormier-controlled entities. Of particular importance in our view is the fact that Lucre, Inc. benefits substantially from the central administrative functions performed by Dalcor for all of the defendant entities. The Superior Court erred in emphasizing form of ownership over operational economic reality in evaluating the status of Lucre, Inc. Other than form of ownership and accounting arrangements, the operational status of Lucre, Inc. is virtually indistinguishable from the other Cormier-related entities.

The entry is:

Judgment with respect to Lucre, Inc. vacated and remanded for further proceedings consistent with the opinion herein.

In all other respects, judgment affirmed.

All concurring.