1998-NMCA-141

965 P.2d 363

**NEW MEXICO DEPARTMENT OF LABOR, Petitioner–Appellant,**

v.

**A.C. ELECTRIC, INC., Respondent–Appellee.**

No. 18317.

Court of Appeals of New Mexico.

Aug. 28, 1998.

Tom Udall, Attorney General, Albert J. Lama, Damon Martinez, Assistant Attorneys General, Santa Fe, for Petitioner-Appellant.

Victor A. Titus, Titus & Murphy, Farmington, for Respondent-Appellee.

## OPINION

ARMIJO, Judge.

{1} In this case of first impression, the Court is asked to interpret the provision for overtime pay in New Mexico's Minimum Wage Act (MWA). NMSA 1978, §§ 50–4–19 to –30 (1955, as amended through 1996). Applying established principles of statutory interpretation, we determine that overtime pay is mandatory when an employee covered by Section 50–4–22(A) of the MWA works more than forty hours in a seven-day week with the employer's knowledge and consent, and where there is any pressure by the employer, however subtle, to perform such work. Because we determine that the district court applied an incorrect legal standard in this case, we reverse and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

{2} In January 1995, Tandy Riddles (Employee) filed a claim for overtime pay with the New Mexico Department of Labor (Department) regarding work she performed while employed by A.C. Electric, Inc. (Employer) in 1994. The Department's Labor Law Administrator held a hearing on the matter and ruled that employee was owed $312.50 in overtime pay. Employee assigned her wage claim to the Department for purposes of collection under NMSA 1978, Section 50–4–11 (1945). The Department then filed a civil complaint against Employer in magistrate court which resulted in a judgment in Employee's favor after a jury trial. Employer appealed the magistrate court judgment to the district court.

{3} In the district court, Employee testified that she was hired by Employer as an electrician apprentice starting at six dollars per hour. She further testified that Employer assigned her to work on a job in Gallup, New Mexico, during the summer of 1994. According to Employee, Employer told her that she would be working more than 40 hours per week on the Gallup job and that she would not be paid at one and one-half times her regular hourly wage for the hours over 40 per week. Employee believed that she had no choice in the matter. She was instructed to record her hours over 40 per week as "banked" hours on her time cards.

{4} Employer's president testified that he did not tell Employee that she would have to work more than 40 hours per week on the Gallup job. Rather, the daily work hours at the Gallup job were set by a supervisor who was Employee's brother and who communicated with the president on several occasions about working on that job through the weekend. Employer's position at trial was that work in excess of 40 hours per week was

available on the Gallup job if Employee wanted to work it and she agreed to "bank" such hours under a policy which Employer described as similar, in some respects, to state and local government policies that are authorized by Section 207(*o*) of the Fair Labor Standards Act (FLSA). 29 U.S.C. § 207(*o*) (1994); *see generally* 29 C.F.R. pt. 553 (1997) (application of FLSA to state and local government employees). Under this policy, Employee could convert her "banked" hours to compensatory time off on an hour-for-hour basis. If such compensatory time was not used by December 31 of the year in which it was earned, Employee would be paid at her regular hourly wage for the "banked" hours.

{5} Employer's president acknowledged that this overtime policy may serve Employer's interests in several ways. For example, he testified that he had an interest in retaining full-time employees on the payroll during slow periods because, among other things, "the taxes are less." Also, since the money owed to employees for banked hours was not kept in a separate account, this money was available for Employer to use for other purposes until Employee requested payment or took the compensatory time off. With respect to the Gallup job in particular, Employer's president acknowledged that he thought two and one-half to three months would have been a reasonable amount of time to complete the work, but it actually took six months to complete. He also acknowledged that the slow pace of the Gallup job was a cause for concern because Employer's costs tend to increase the longer any job goes on.

{6} After hearing the testimony of Employee, Employer, and the Labor Law Administrator, the district court found that Employee worked for Employer from July 6, 1994, to September 9, 1994, and during this period Employee worked in excess of 40 hours per week, for a total of 71 hours, with Employer's knowledge and consent. However, the district court also found that Employer paid overtime wages only when it specifically designated that time as overtime. The district court concluded that Employer did not "require" Employee to work in excess of 40 hours per week within the meaning of Section 50–4–22(C) of the MWA. As neither

party asserted that Employee was covered by the FLSA's overtime provisions, the district court did not rule on whether Employer's overtime policy violates the FLSA or whether the MWA is preempted by federal law in any respect.

{7} Based on its findings and conclusions, the district court dismissed Employee's claim for lack of proof of any statutory violation. The Department appeals the district court's order of dismissal.

## II. DISCUSSION

{8} This case presents a question of statutory interpretation which we review de novo. *See Cox v. Municipal Boundary Comm'n,* 120 N.M. 703, 705, 905 P.2d 741, 743 (Ct.App.1995); *cf. State v. Attaway,* 117 N.M. 141, 144–45, 870 P.2d 103, 107–08 (1994) (affording de novo review of mixed questions of fact and law requiring consideration of legal concepts and exercise of judgment about values that animate legal principles). In particular, we must ascertain the meaning of the phrase, "required to work," as it appears in Section 50–4–22(C). We also review the district court's application of Section 50–4–22(C) to the facts of this case.

{9} Section 50–4–22(C) states that:
No employee covered by the provisions of Subsection A of this section shall be required to work more than forty hours in any week of seven days, unless he is paid one and one-half times his regular hourly rate of pay for all hours worked in excess of forty hours.

In interpreting this statute, our responsibility is "to search for and effectuate the legislative intent—the purpose or object—underlying the statute." *State ex rel. Helman v. Gallegos,* 117 N.M. 346, 353, 871 P.2d 1352, 1359 (1994).

{10} Employer asserts that our interpretation of Section 50–4–22(C) must be governed by the plain-meaning rule, according to which we search no farther than the clear and unambiguous language of the statute itself to ascertain its meaning. *See Cummings v. X–Ray Assoc. of N.M.,* 1996–NMSC–035, ¶ 44, 121 N.M. 821, 918 P.2d 1321; *Key v. Chrysler Motors Corp.,* 1996–

NMSC–038, 121 N.M. 764, 768–69, 918 P.2d 350, 354–55. Employer further asserts that the term "require" should be given its ordinary meaning and cites a dictionary definition according to which this term means "to order to do something, to ask for authoritatively, demand, to impose need, to call for or exact an obligation, to place under an obligation or necessity." *The Random House College Dictionary* 1121 (rev. ed.1982). Under this interpretation, Employer asserts that Employee is not entitled to overtime pay because she was not required to work over 40 hours per week. Rather, she was simply permitted to work under Employer's policy of "banking" hours over 40 per week.

{11}  The Department asserts that Employer's application of the plain-meaning rule is not correct because it runs counter to the MWA's purpose and intent. We agree. The plain-meaning rule "does not require a mechanical, literal interpretation of the statutory language," and "[i]t is rare, if not impossible, for any language—statutory or otherwise—to be utterly free from ambiguity." *Cummings*, 1996–NMSC–035, ¶ 45, 121 N.M. 821, 918 P.2d 1321. In this case, we find several aspects of Section 50–4–22(C) which "give rise to legitimate . . . differences of opinion concerning the statute's meaning." *Key*, 1996–NMSC–038, 121 N.M. at 769, 918 P.2d at 355 (quoting *Gallegos*, 117 N.M. at 353, 871 P.2d at 1359).

{12}  First, there is no statutory definition of the phrase "required to work," and we recognize that the word "require" has different shades of meaning depending on its context. *Cf.* 2 *The New Shorter Oxford English Dictionary* 2556 (1993) (definitions of "require" include ask, inquire, question, seek, pursue, beg, entreat, invite, desire, request, call, summon, claim, insist, demand, or command). Because employers generally occupy a position of authority over their employees, any subtle pressure to work over 40 hours per week may be understood by those employees as "requiring" overtime in the sense of "to ask for authoritatively" or "to impose need." Subtle pressure can render the work less than totally voluntary. Thus, as a general rule, employees covered by the MWA may be "required to work" more than 40

hours per week even when their employers do not overtly demand such work.

{13}  This rule is consistent with the principle that a statute with a remedial purpose must be liberally construed to implement its purpose, and any exception will be strictly construed. *See Michaels v. Anglo Am. Auto Auctions, Inc.*, 117 N.M. 91, 94, 869 P.2d 279, 282 (1994); *Las Campanas Ltd. Partnership v. Pribble*, 1997–NMCA–055, ¶ 15, 123 N.M. 520, 943 P.2d 554. The MWA is a statute with a remedial purpose. As such, we must consider three points:

> 'the old law, the mischief, and the remedy; that is, how the common law stood at the making of the act; what the mischief was, for which the common law did not provide; and what remedy the [legislature] hath provided to cure this mischief. And it is the business of the judges so to construe the act as to suppress the mischief and advance the remedy.'

*Michaels*, 117 N.M. at 94, 869 P.2d at 282 (quoting 1 William Blackstone, *Commentaries* *87).

{14}  Under the old law which predated the enactment of state and federal wage and hour statutes, "the parties [to an employment contract had] an equal right to obtain from each other the best terms they can as the result of private bargaining." *Adkins v. Children's Hosp.*, 261 U.S. 525, 545, 43 S.Ct. 394, 67 L.Ed. 785 (1923), *overruled by West Coast Hotel Co. v. Parrish*, 300 U.S. 379, 400, 57 S.Ct. 578, 81 L.Ed. 703 (1937). The mischief created by this law was that it failed to recognize "the exploitation of a class of workers who are in an unequal position with respect to bargaining power[,]" *West Coast Hotel Co.*, 300 U.S. at 399, 57 S.Ct. 578, and who are thus relatively defenseless against "labor conditions detrimental to the maintenance of the minimum standard of living necessary for [their] health, efficiency, and general well-being." 29 U.S.C. § 202(a) (1994).

{15}  To correct this mischief, Congress and the states enacted wage and hour statutes which "put a floor on wages and a ceiling on hours." *Wilson Oil Co. v. Hardy*, 49 N.M. 337, 344, 164 P.2d 209, 213 (1945)

(interpreting the FLSA). The remedy provided by such wage and hour restrictions is " 'to protect [employees] against the economic pressure it was assumed they would be unable to resist, if offered a job. To this end it was as necessary to deny them the power to bargain away their privilege.' " *Id.* at 346, 164 P.2d at 215 (quoting *United States ex rel. Johnson v. Morley Constr. Co.*, 98 F.2d 781, 788 (2d Cir.1938)).

{16} The MWA declares that state policy is to establish and safeguard "minimum wage and overtime compensation standards which are adequate to maintain the health, efficiency and general well-being of workers against the unfair competition of wage and hours standards which do not provide adequate standards of living." Section 50–4–19. Implicit in this policy is the purpose of protecting employees from coercive economic pressure.

{17} We recognize that the Legislature did not choose to phrase the overtime provision in the MWA in the same manner as the FLSA. In particular, Section 50–4–22(C) of the MWA uses the phrase, "required to work," where Section 207(a)(1) of the FLSA uses the term "employ." However, this difference between the MWA's overtime provision and its federal counterpart does not provide a sound basis for interpreting the MWA in a manner that is contrary to its remedial purpose. Interpreting a state overtime statute with language that is very similar to Section 50–4–22(C), the Maine Supreme Court determined that the term "require" does not mean that employees must prove they are overtly compelled to work more than 40 hours per week in order to obtain overtime pay because placing such a burden on employees "would seriously undermine the underlying remedial purposes of the overtime law." *Director of Bureau of Labor Standards v. Cormier*, 527 A.2d 1297, 1300–01 (Me.1987). We agree. *Cf. State v. Warsop*, 1998–NMCA–033, ¶ 10, 124 N.M. 683, 954 P.2d 748 (interpretation of statutes from other jurisdictions may provide persuasive authority if their language is practically identical).

{18} Placing such a burden on the employee undermines the remedial purpose of the MWA because it fails to recognize "the subtle pressures that may exist when an employee is asked to work overtime" by an employer who occupies a position of authority over that employee. *Cormier*, 527 A.2d at 1300; *cf. Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946) (remedial nature of the FLSA and recordkeeping demands it places on employers militate against making burden of proof an impossible hurdle for employees). If employees covered by the MWA bear the burden of establishing a clear distinction between permissive and compulsory work, or sifting through finer distinctions between assigning, requesting, or allowing, then they are put in the difficult position of risking insubordination by asking and documenting, in each instance, whether their employer's words are specifically intended to constitute a command or are simply a request. Moreover, with such a heavy burden placed on employees, the employer—rather than the Legislature—is put in the position of determining when overtime compensation must be paid and when it need not be paid. In this situation, "[c]ircumstances of economic pressure could too easily influence the employee to surrender rights the [statute] is intended to fairly and fully protect." *Hardy*, 49 N.M. at 346, 164 P.2d at 215; *cf. Cummings*, 1996–NMSC–035, ¶ 44, 121 N.M. 821, 918 P.2d 1321 (when interpreting a statute, court endeavors to fulfill the statute's objectives).

{19} With regard to Employer's attempt to analogize its overtime policy to Section 207(*o*) of the FLSA, we note that the MWA contains no counterpart to Section 207(*o*). However, assuming for the purposes of Employer's argument that Section 207(*o*) does apply in this case, it would not benefit Employer because the allowance it provides for compensatory time in lieu of overtime pay is limited to state and local governments and does not extend to private employers. *See generally* 5 *Employment Coordinator* ¶ C–17,830 (Thomas Curry et al. eds.1997). In addition, Employer's policy does not even comply with the requirements for governmental employers under Section 207(*o*) because Employer only credits employees with one hour of compensatory time for each hour

worked over 40 per week, while governmental employers generally must credit their employees with one and one-half hours of compensatory time off for each hour of overtime worked.

{20} Finally, Employer's policy of "banking" hours in excess of 40 per week and deferring compensation for these hours for a period of up to one year appears to conflict with provisions in both the FLSA and New Mexico law that prohibit employers from withholding wages earned by their employees for such a lengthy period. *See* NMSA 1978, § 50–4–2(A) (1993) (requiring payment of wages on at least semi-monthly basis with payment deferred no later than ten days after close of pay period); 5 *Employment Coordinator, supra* ¶ C–16,098 (under the FLSA, time off in lieu of overtime pay must be granted during same pay period in which overtime accrued). When two statutes cover the same subject matter, we attempt to harmonize and construe them together in a way that facilitates their operation and the achievement of their goals. *See State ex rel. Schwartz v. Sanchez,* 1997–NMSC–021, ¶ 7, 123 N.M. 165, 936 P.2d 334. For these reasons, we do not agree that Employer's compensatory-time rule renders its overtime policy consistent with the remedial purpose of the MWA. The MWA simply does not provide for compensatory time in lieu of overtime pay.

{21} We conclude that Employer's policy of allowing Employee to convert "banked" hours to compensatory time off on an hour-for-hour basis does not exempt Employer from the overtime pay requirement in Section 50–4–22(C). Employee's entitlement to overtime pay under Section 50–4–22(C) does not depend on proof that Employer overtly compelled or coerced her to work more than 40 hours per week. Rather, Employee may meet her burden of proving she was "required to work more than forty hours in any week of seven days" if she can show by a preponderance of the evidence that she worked those hours with Employer's knowledge and consent, and there was any pressure from Employer, however subtle, to work those hours. Insofar as it is reasonable to do so, the district court may infer from the circumstances of the employment relationship that such subtle pressure existed. The circumstances that the district court may consider in deciding whether to make such inferences include the extent to which Employer or its agents occupied a position of authority over Employee, and time constraints or other factors which show that Employer had an interest in having Employee work more than 40 hours per week during the period at issue.

{22} We conclude that the district court's ruling was based on an incorrect legal standard. The district court's findings, as well as its oral comments at trial, indicate that it believed the term "required to work" only refers to overt demands and does not include the kind of subtle pressures we have discussed in this opinion. Further, we cannot reasonably infer from the district court's findings that Employer imposed no pressure on Employee to work more than 40 hours per week or had no interest in requiring overtime work. *Cf. Padilla v. Real Estate Comm'n,* 106 N.M. 96, 98, 739 P.2d 965, 967 (1987) (remanding for additional findings and conclusions where decision under review was insufficient to afford reviewing court clear understanding as to whether that decision was based on applicable legal standard). Hence, we reverse and remand for a determination of whether there was any pressure by Employer to work the 71 hours in excess of 40 per week that the district court found Employee has worked with Employer's knowledge and consent. On remand, the district court shall apply the new standard to the evidence contained in the current record so long as the district court is satisfied that there exists sufficient evidence to rule on the matter. Otherwise, the district court may allow the parties an opportunity to provide additional evidence on the question.

## III. CONCLUSION

{23} For the foregoing reasons, we reverse the district court's order of dismissal and remand for further proceedings consistent with this opinion. Accordingly, we award costs on appeal to the Department.

{24} **IT IS SO ORDERED.**

BUSTAMANTE, J., concurs.

HARTZ, C.J., dissents in part, concurs in part.

HARTZ, Chief Judge (concurring in part and dissenting in part).

{25} I address only whether Tandy Riddles (Employee) was "required" to work overtime.

{26} On appeal we review the evidence at trial "in the light most favorable to the prevailing party, indulge all reasonable inferences in support of the verdict, and disregard all inferences or evidence to the contrary." *Wirth v. Commercial Resources, Inc.,* 96 N.M. 340, 343, 630 P.2d 292, 295 (Ct.App. 1981). Given that standard of review, I would summarize the evidence a bit differently from the majority. A.C. Electric, Inc. (Employer) is an electrical contractor. Employee worked for Employer as an electrician apprentice in 1994. At times Employer needed its employees to work overtime. It then instructed them to work overtime and compensated them at one and one-half times their regular hourly rate of pay. In addition, employees had the option of working overtime if they so chose. On those occasions the employee could "bank" overtime and the hours could later be used by the employee for compensatory time off on an hour-for-hour basis. If "banked" hours were not used prior to December 31, the employee would be reimbursed for the time at regular hourly wage rates.

{27} Employer's office was in Farmington, New Mexico. In the summer of 1994 Employee was assigned to a job site in Gallup, New Mexico, about 120 miles from Farmington. While working in Gallup she lived in a motel. According to the trial testimony of Employer's president, Employee was told that she was not required to work overtime at the Gallup job. The president also testified that the job had been a forty-hour-per-week job before Employee began her stint there. Employee, however, chose to work overtime on weekends, with the understanding that the extra hours would be banked. She did not make a prior request to work weekends, but Employer became aware of her work when she submitted her time cards.

{28} The following would not be an unreasonable characterization of what happened: Employer had a contract to perform work in Gallup. There were no tight time constraints on the work, so Employer had no interest in requiring overtime work. Employee, on the other hand, wanted to limit the time that she was away from home. If she could finish her work and move back to Farmington sooner by working on the site during weekends, she would prefer that course to working a forty-hour week and returning to Farmington each weekend. Employer would be willing to accommodate Employee's wishes so long as Employer did not incur additional expenses. Permitting Employee to bank her extra time would accommodate Employee's wishes without burdening Employer. In short, Employer imposed no pressure on Employee to work over the weekend. The initiative for weekend work came solely from Employee.

{29} If the above account accurately reflects what happened in this case, would any competent speaker of the English language say that Employer *required* Employee to work overtime? I do not think so.

{30} I understand, and share, the majority's concerns about subtle pressures that employers could place on employees. A "request" from an employer to an employee can be as effective as a demand. An employee may reasonably believe that failure to comply with a request would lead to adverse consequences for his or her employment. Thus, the fact-finder must be very sensitive to the realities of the workplace in deciding whether an employee has been required to work overtime. This is the rationale behind the decision in *Director, Bureau of Labor Standards v. Cormier,* 527 A.2d 1297 (Me.1987), which affirmed a trial court ruling that the employer had "required" employees to work overtime when it had "assigned" or "asked" the employees to work overtime. But there is a big difference between "asking" or "assigning" on the one hand and "permitting" on the other.

{31} Apparently, federal law requires all overtime work to be compensated at one and

one-half times the regular hourly rate, regardless of whether it was the employer or the employee who wanted the employee to work overtime. Overtime pay is required whenever the employer "employs" an employee for more than the standard work week. The federal Fair Labor Standards Act, 29 U.S.C. Section 207(a)(1) (1995), states:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

But the New Mexico statute does not track the language of the federal statute. The New Mexico statute states that "[n]o employee ... shall be *required* to work more than forty hours in any week of seven days" without being paid at an overtime rate. NMSA 1978, § 50–4–22(C) (1993) (emphasis added). Clearly, the New Mexico Legislature chose a different test from that imposed by federal law.

{32} Thus, as I understand the record below, the decision of the district court is supported by substantial evidence and could be affirmed. On the other hand, perhaps the purpose of the remand ordered by the majority is simply to make sure that the district court properly took into account the possibility that subtle pressures from Employer could, as a practical matter, have "required" Employee to work overtime. If so, I have no strong quarrel with the remand.