# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: May 14, 2014

Docket No. 32,059

DEBORAH RAINALDI, SHONNA BACA,
and ROBERT KESSEL, on behalf of themselves
and all others similarly situated,

      Plaintiffs-Appellants,

v.

CITY OF ALBUQUERQUE,

      Defendant-Appellee.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Valerie A. Huling, District Judge

Youtz & Valdez, P.C.
Shane C. Youtz
Stephen Curtice
Albuquerque, NM

for Appellants

City of Albuquerque
David Tourek, City Attorney
Samantha M. Hults, Assistant City Attorney
Rebecca E. Wardlaw, Assistant City Attorney
Albuquerque, NM

for Appellee

## OPINION

**HANISEE, Judge.**

**{1}** In this single issue appeal, we are called upon to resolve a matter of first impression: whether the City of Albuquerque's (the City) overtime compensation schedule for

Albuquerque Police Department (APD) employees violates the statutory time payment provisions required of New Mexico employers. *See* NMSA 1978, § 50-4-2(A) (2005) (requiring the designation of regular pay days on at least a semimonthly basis and that compensation for services rendered be postponed no later than ten days after the close of the pay period). The district court granted the City's motion for summary judgment and dismissed the collective action complaint brought by certain affected APD employees (Plaintiffs), ruling that the City's two-week processing delay of overtime accrued during the second week of a given bi-weekly pay period complies with Section 50-4-2(A). We hold that the City's overtime compensation schedule violates the statutory requirement of Section 50-4-2(A) that employees be compensated for "all services rendered" within ten days after the close of a given pay period, and that the City is not exempt from compliance. We reverse.

**BACKGROUND**

{2}     APD employees are paid on a bi-weekly basis. Prior to July 3, 2009, employee paychecks included compensation for both regular and overtime services provided during a given pay period. This practice ended pursuant to Department Special Order 09-53, issued by the APD Chief of Police on June 10, 2009, which changed the manner in which time sheets were submitted for administrative payroll processing. As a result of the modification, on days they are paid, APD employees receive overtime pay accumulated during the first week of the particular pay period, combined with that from the second week of the preceding pay period. Stated differently, compensable overtime performed during the second week of a particular pay period is processed during the subsequent pay period. APD maintained that the modification was designed to reduce timesheet revisions and to improve supervisory capacity to "track and audit time and identify discrepancies."

{3}     Nearly two years after APD implemented the modification, Plaintiffs filed a lawsuit in district court alleging that the City's overtime pay structure violates the statutory requirements for employee compensation. Section 50-4-2(A) states, in relevant part:

> An employer in this state shall designate regular pay days, not more than sixteen days apart, as days fixed for the payment of wages to all employees paid in this state. The employer shall pay for services rendered from the first to the fifteenth days, inclusive, of any calendar month by the twenty-fifth day of the month during which services are rendered, and for all services rendered from the sixteenth to the last day of the month, inclusive, of any calendar month by the tenth day of the succeeding month.

The City answered and sought summary judgment based on an absence of material factual disputes and various theories, discussed herein, under which the City asserted it was entitled to judgment as a matter of law. Following a hearing, the district court agreed and granted the City's motion for summary judgment. Plaintiffs appeal, arguing that although the City satisfies the statutory requirement to "designate regular pay days[] not more than sixteen days apart," its manner of pay violates the second statutory requirement that employees be

paid for all services rendered during a particular pay period in accordance with the prescribed time line. Plaintiffs additionally contend that the City's proffered bases for exemption do not liberate it from compliance with Section 50-4-2(A).

**DISCUSSION**

**A.      Standard of Review**

**{4}**      Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Self v. United Parcel Serv.*, *Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. "[I]f no material issues of fact are in dispute and an appeal presents only a question of law, we apply de novo review." *City of Albuquerque v. BPLW Architects & Eng'rs*, *Inc.*, 2009-NMCA-081, ¶ 7, 146 N.M. 717, 213 P.3d 1146.

**B.      The City's Overtime Compensation Schedule for APD Employees Does Not Comply With Section 50-4-2(A)**

**{5}**      On appeal, Plaintiffs do not assert that summary judgment was improper due to the existence of genuine issues of material fact. Instead, Plaintiffs argue that the City "[u]nquestionably [v]iolates" the "[c]lear and [u]nambiguous [c]onstraints" of Section 50-4-2(A) as a matter of law, and none of the City's "proffered defenses excuse [its] failure to abide by the plain language of the statute[.]"

**{6}**      Section 50-4-2(A) imposes on employers two distinct wage payment requirements: (1) that employers "shall designate regular pay days, not more that sixteen days apart, as days fixed for the payment of wages to all employees paid in [the] state[,]" and (2) that employers "shall pay for services rendered from the first to the fifteenth days . . . by the twenty-fifth day of the month during which services are rendered, and for all services rendered from the sixteenth to the last day of the month . . . by the tenth day of the succeeding month." *Id.* The parties do not dispute that the City's bi-weekly compensation schedule, designating pay days every fourteen days, is in compliance with the frequency of compensation requirement. The parties disagree, however, as to whether the City complies with the second statutory requirement establishing the timing by which compensation for services is due. *See* § 50-4-2(A).

**{7}**      Plaintiffs assert that because the City does not compensate for overtime earned during the second week of a pay period until the pay day following the subsequent pay period, which occurs twenty-one days later, the City is afoul of the requirement that payment for all services rendered be made by the tenth day following conclusion of any given period. The City initially responds that because its pay days occur more frequently than is required by Section 50-4-2(A), it is in compliance with the statute. Our review of the wording of the statute, however, provides no indication that employers choosing to schedule pay periods at a greater frequency than is statutorily required are consequently freed from having to

3

compensate employees for all services rendered by the time payment is otherwise due. In fact, with the limited exception of "state employees, other than employees of institutions of higher education," whose salaries and wages are governed by the rules of the department of finance and administration, "an employer shall pay wages in full[.]" Section 50-4-2(B).

{8}     We recognize that Section 50-4-2(A) facially illustrates a semimonthly payment schedule, requiring one pay day by the twenty-fifth day of the month for services rendered between the first and fifteenth days, and another by the tenth day of the succeeding month for services rendered between the sixteenth and last days of the month. As we have noted, the City does not utilize this semimonthly schedule, but rather a bi-weekly payment schedule; thus, the specific semimonthly payment deadlines are inapplicable here. Nonetheless, we have previously observed the statutory compensation time line to require payment within ten days after the close of any given pay period, not just a bi-monthly one. *See N.M. Dep't of Labor v. A.C. Elec., Inc.*, 1998-NMCA-141, ¶ 20, 125 N.M. 779, 965 P.2d 363 (citing Section 50-4-2(A) as requiring "payment of wages on at least semi[]monthly basis with payment deferred no later than ten days after close of pay period"). The City's current overtime compensation schedule does not render payment for overtime services within ten days after the close of the given pay period, but defers payment for the second week of the pay period until the subsequent pay day, twenty-one days following the conclusion of the pay period. This delayed compensation of accrued overtime is not consistent with the ten-day payment window specified in Section 50-4-2(A).

{9}     Accordingly, we conclude that the manner in which the City compensates its APD employees is inconsistent with that statutorily required of employers in New Mexico. We must next resolve whether the City has asserted any basis on which it is excluded or is otherwise exempt from the category of employers governed by Section 50-4-2(A).

**C.     The City's Proffered Exemptions Do Not Liberate it from Compliance With Section 50-4-2(A)**

{10}     The City argues that even if its overtime compensation schedule is disallowed by Section 50-4-2(A), it is exempt from compliance on any of four distinct bases: (1) Section 50-4-2(B) provides an exception for state public employers, and as an auxiliary of the state, the City is likewise exempt; (2) the Legislature did not intend Section 50-4-2(A) to apply to any public employers; (3) public employers are explicitly excluded from the definition of "employer" under Section 50-4-21 of the New Mexico Minimum Wage Act (MWA), NMSA 1978, §§ 50-4-19 to -30 (1955, as amended through 2009); and (4) as a home rule municipality, the City may "exercise all legislative and policy making functions[.]" We address each of the City's arguments below and conclude that none exempt it from the statutorily mandated compensation time line of Section 50-4-2(A).

**1.     The City Does Not Qualify for Exemption Under Section 50-4-2(B) Despite Being an Auxiliary of the State**

4

**{11}**     First, the City argues that it is exempt from compliance with Section 50-4-2(A) because Section 50-4-2(B) excepts "payment of salaries and wages to state employees[.]" As an "auxiliary of the state[,]" the City asserts that it is included within the grouping of statutorily exempt *state* public employers. The City relies on *Morningstar Water Users Ass'n v. Farmington Municipal School District,*1995-NMSC-052, ¶ 37, 120 N.M. 307, 901 P.2d 725, and *City of Albuquerque v. New Mexico Public Regulation Commission*, 2003-NMSC-028, ¶ 3, 134 N.M. 472, 79 P.3d 297 for this proposition.

**{12}**     We conclude that Plaintiff's reliance on both cases is misplaced. While *Morningstar Water Users Ass'n* does state, as the City contends, that a municipality "is an auxiliary of the state government," this relationship does not equate municipalities such as the City with the state for the purposes of benefits or privileges. *See Morningstar Water Users Ass'n*, 1995-NMSC-052, ¶ 37 (citing *Loeb v. City of Jacksonville*, 134 So. 205, 207 (Fla. 1931), which stated that, "[a] 'city' is a mere auxiliary to the state government. It is a public institution for self-government and local administration of the affairs of state"); *Hurley v. Vill. of Ruidoso*, 2006-NMCA-041, ¶ 7, 139 N.M. 306, 131 P.3d 693 (declining to recognize the proposition that a municipality is an auxiliary of the state as pertinent to the analysis of whether a municipality is afforded the same benefits and immunities possessed by the state). Likewise, *Public Regulation Commission* does not establish the proposition that municipalities are treated identically to the state for purposes of benefits such as statutory exemption, but instead holds that political subdivisions of the state possess "only such powers as are expressly granted to it by the Legislature[.] 2003-NMSC-028, ¶ 3 (internal quotation marks and citation omitted). *See New Mexicans for Free Enter. v. City of Santa Fe* (*NMFE*), 2006-NMCA-007, ¶ 13, 138 N.M. 785, 126 P.3d 1149 (stating that because the municipality is an auxiliary of the state, the municipalities are "subordinate to the state government").

**{13}**     More tellingly, the plain wording of Section 50-4-2(B) expressly exempts only the State from the payment rigors to which New Mexico employers must adhere. Because municipalities such as the City are not discharged from compliance by the statutory language chosen by the Legislature and are not otherwise assisted by our jurisprudence, we will not ourselves supply exemption. *Reule Sun Corp. v. Valles*, 2010-NMSC-004, ¶ 15, 147 N.M. 512, 226 P.3d 611 (stating that under the plain meaning rule, "[w]e will not read into a statute language which is not there, especially when it makes sense as it is written" (internal quotation marks and citation omitted)). *See Sims v. Sims*, 1996-NMSC-078, ¶ 17, 122 N.M. 618, 930 P.2d 153 (stating that the plain meaning rule requires a court to "give effect to [the statute's] language and refrain from further statutory interpretation" when the language is clear and unambiguous). We conclude that the lone delineated exception to the payment schedule contained in Section 50-4-2(B) is expressly applicable to the compensation of certain "state employees" only and does not by extension apply to auxiliaries of the state, such as the City.

2.     **The City is Not Excused From Compliance With Section 50-4-2(A) on the Basis That the Phrase "Public Employer" is Absent From the Definition of "Employer" Contained in Section 50-4-1(A)**

**{14}**     As a second basis for exemption, the City argues that the Legislature intended the City to be excused from compliance with Section 50-4-2(A) because the phrase "public employer" is not expressly included within the definition of "employer" under Section 50-4-1(A). In pertinent part, Section 50-4-1(A) defines "employer" as "every person, firm, partnership, association, corporation, receiver or other officer of the court of this state, and any agent or officer of any of the above mentioned classes[.]" We conclude this language includes New Mexico employers of any category.

**{15}**     Our perspective is supported by the purposeful and carefully limited exclusion of salaries and wages paid to most state employees as permitted by Section 50-4-2(B). This provision would be needless were Section 50-4-2(A) inapplicable to the State in its capacity as a public employer. This necessary exemption is then limited insofar as it applies only to wages paid to state employees "other than employees of institutions of higher education." Section 50-4-2(B). We view this language to constitute the State's limited exemption from compliance with Section 50-4-2(A) excluding employees in higher education occupations that are paid according to the schedule and time limitations established within Section 50-4-2(A). *See* § 50-4-2(B). By so exactly describing the nature of the State's exclusion from the statute, we must presume that were other exclusions to exist, they would not have gone unmentioned or otherwise wholly omitted from the statute. When the Legislature has spoken with precision on a topic—here establishing a lone category of exclusion from the statute's otherwise general application—it is not the proper role of the judiciary to make plural that which is singular. *See City of Deming v. Deming Firefighters Local 4521*, 2007-NMCA-069, ¶ 20, 141 N.M. 686, 160 P.3d 595 ("As a matter of statutory construction, we do not read language that is not present into a statute."); *Swink v. Fingado*, 1993-NMSC-013, ¶ 29, 115 N.M. 275, 850 P.2d 978 ("Legislative silence is at best a tenuous guide to determining legislative intent.").

**{16}**     The City makes several arguments geared toward our application of something other than this general approach to statutory construction. First, it maintains that "when the [L]egislature wants to include governmental employers in its statutes, it does so explicitly." We are not persuaded by this overly general assertion. Our examination of NMSA 1978, Chapter 50, Article 4 (1933, as amended through 2013) indicates that when the Legislature did not intend a statutory provision to apply to specific entities—the state and all of its political subdivisions—it instead explicitly provided broader exemption. For example, in the separate definitional section applicable to the MWA, also set forth in Chapter 50, Article 4, the Legislature expressly excluded "the state or any political subdivision of the state" from the definition of an "employer." *See* § 50-4-21(B). Contrary to the City's argument, within Chapter 50, Article 4, we see no indication that when the Legislature intended a statutory provision to apply to specific governmental employers, it explicitly added those employers. We do, however, observe that where the Legislature did not want to include governmental employers, it expressly excluded them. Section 50-4-21(B). Yet Section 50-4-1 does not contain the express exclusion contained in Section 50-4-21. Considering the manners in which exclusions within both statutes were expressed, we are not persuaded that Section 50-4-2(A) silently intended that its payment mandates were inapplicable to municipalities

simply because municipalities were not affirmatively identified as employers within the statute.

**{17}** Second, the City asserts that the legislative history of NMSA §§ 50-4-1 to -12 (1937, as amended through 2005) compels the conclusion that Section 50-4-2(A) is "clearly not applicable to public employees." Indeed, when the Act was originally passed, it was entitled "An Act to Establish Regular Pay[]Days and to Regulate the Payment of Wages and Compensation for Labor or Service in *Private Employment* and Repealing All Acts in Conflict Herewith." 1937 N.M. Laws, ch. 109 (emphasis added). The City asserts that due to the original title's application to solely "[p]rivate [e]mployment," the current version of the statute must intend all public employers to be exempt. *Id.* We are not persuaded that changes to the title of the statute lead to such a conclusion for two reasons. First, the statute no longer contains a title implicating only private employers; the chapter is currently entitled "Employment Law." *See* NMSA 1978, Chapter 50. We cannot construe modification of the original titling language to contradictorily indicate the Legislature's intent to continue to exclude public employers from the statute's breadth. Second, we have noted that the Legislature subsequently included the provision within Section 50-4-2(B) that exempts certain state employers from compliance. This single, limited exemption appears to indicate that non-exempt state employers and other public employers are, consistent with the elimination of the "[p]rivate [e]mployment" descriptor contained within the enacting title of the legislation, subject to compliance with Section 50-4-2(A) unless otherwise specified.

**{18}** Third, the City argues that not only was the title of the Act changed, but the 1937 iteration of the statute utilized the phrase "every employer," while the current Section 50-4-2(A) applies to "[a]n employer." *Compare* 1937 N.M. Laws, ch. 109, § 2, *with* Section 50-4-2(A). Yet we cannot construe such a minute and seemingly indistinct alteration to the way employers are described to transformatively exclude all public employers from the statutory definition. As we have noted, Section 50-4-2(B)'s express exclusion of the state in its capacity as an employer would be plainly unnecessary were all public employers otherwise exempted. *See* Section 50-4-2(B).

**{19}** The City's fourth assertion that the Legislature did not intend for municipalities to be included in the definition of "employer" under Section 50-4-1(A) is based on the fact that the payment of wages to public employees is not addressed in Chapter 50, Article 4, but rather in NMSA 1978, § 10-7-2(A) (2005). This argument is likewise unavailing. Like Section 50-4-2(B), Section 10-7-2(A) is only applicable to "[p]ersons employed by or on behalf of the state[.]" As we discussed above, a municipality is not to be equated with the state for the purpose of the statutory interpretation of Section 50-4-1(A).

**{20}** In rejecting the City's arguments in these regards, we note that if public policy or unique circumstances such as those in existence with regard to APD overtime justify the addition of municipalities as excluded employers for purposes of Section 50-4-2, it is the Legislature's prerogative to modify the statute it wrote. We hold that as written, the City is not excluded from the definition of employer under Section 50-4-1(A) based on its absence

7

from the exclusionary statutory language, and we will not read the further exclusion of municipalities into Section 50-4-1(B) where such language does not there appear.

### 3. The City is Not Exempt From Compliance with Section 50-4-2(A) by Virtue of the Definition of "Employer" Under the MWA

**{21}** As its third proffered exception, the City argues it is exempt from compliance with Section 50-4-2(A) because the payment of overtime wages is collaterally addressed within Section 50-4-22(D) of the MWA, and under its definition of employer, political subdivisions of the state are explicitly excluded. The MWA defines "employer" as "any individual, partnership, association, corporation, business trust, legal representative . . . but shall not include . . . the state or any political subdivision of the state[.]" Section 50-4-21(B). The parties agree that in this context the City is excluded from this definition of employer; however, they dispute whether exclusion under the MWA bears the reach to exempt the City from compliance with Section 50-4-2(A). Plaintiffs contend that because Section 50-4-2(A) is not contained within the MWA itself, the City cannot be peripherally exempted from compliance with Section 50-4-2(A) based on an inapplicable statutory definition of employer contained within a separate and distinct act. *See* § 50-4-20 (stating that "Sections 50-4-19 through 50-4-30 . . . may be cited as the 'Minimum Wage Act.' ")[1] Conversely, the City argues that because Section 50-4-22(D) of the MWA governs the very necessity of employee compensation for overtime services, and because the City is not an employer required to provide overtime compensation for purposes of Section 50-4-21(B), it is exempted from a statutorily mandated pay schedule with regard to overtime compensation.

**{22}** Here, the City has opted not to utilize its statutory exemption from overtime compensation and has instead decided to pay its employees for such additional services. But even in this circumstance, we find no authority to support the assertion that by electing to compensate its employees for overtime services, the City is automatically exempted from the statutorily mandated compensation schedule for "all services rendered." Section 50-4-2(A). Because work completed during overtime hours constitutes a service rendered by the employee, determined by the City to be compensable, Section 50-4-2(A) continues to mandate that the City must pay its employees within ten days of the end of a particular pay period.

**{23}** In conjunction with this argument, the City argues that we should interpret the MWA guided by federal law. *See Garcia v. Am. Furniture Co.*, 1984-NMCA-090, ¶ 13, 101 N.M. 785, 689 P.2d 934 (stating that it is appropriate to look to the decisions of federal courts

---

[1]Some confusion existed on the part of Plaintiffs with regard to the MWA. In their original complaint, Plaintiffs asserted a violation of Section 50-4-2 and referenced this section as part of the MWA. The MWA, however, only contains Sections 50-4-19 through 50-4-30. *See* § 50-4-20. Plaintiffs acknowledge this mistake in their brief in chief and now contend that the MWA "has no bearing on this case."

8

when interpreting a New Mexico statute when the federal and New Mexico statutory provisions are similar). The City asserts that Section 50-4-22(D), the overtime provision of the MWA, is similar to the federal overtime provision, 29 U.S.C. § 207(a) (2012), set forth within the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 (2012). Accordingly, it contends we should look to federal law to determine whether the City's overtime compensation schedule is improper.

**{24}** The FLSA requires non-exempt employers to compensate employees at a rate of at least one and one-half times the regular rate when employees work in excess of forty hours per week, similar to Section 50-4-22(D). *See* 29 U.S.C. § 207(a)(1). Under federal law, "[t]he general rule is that overtime compensation earned in a particular work[]week must be paid on the regular pay day for the period in which such work[]week ends." 29 C.F.R. § 778.106 (2013). However, when the proper amount of overtime cannot be determined until after the end of the regular pay period, the employer may compensate for overtime "as soon after the regular pay period as is practica[l]" without violating the Act. *Id.*

**{25}** The City contends that its fourteen-day delay in processing overtime is in compliance with the federally analogous "prompt payment requirement" of the FLSA and is, therefore, not in violation of Section 50-4-2(A). For this contention, the City relies on *Nolan v. City of Chicago*, 162 F. Supp. 2d 999, 1003-04 (N.D. Ill. 2001). *Nolan* held that a delay in overtime compensation of approximately twenty-eight days was not in violation of 29 C.F.R . § 778.106 because payment was made "as soon as is practica[l]." *Nolan*, 162 F. Supp. 2d at 1005. However, *Nolan* is distinguishable from the present case. In *Nolan*, the City of Chicago was a recognized employer under the FLSA and directly subject to the overtime compensation requirements. *Nolan*, 162 F. Supp. 2d at 1001. Here, as the City notes, by virtue of Section 50-4-21(B), it is exempt from Section 50-4-22(D) and therefore not required to compensate for overtime services. Furthermore, the *Nolan* court acknowledged that the overtime calculation process at issue was a highly complex system, and although the City of Chicago was working to implement a more efficient automated system, it was, at the time, unable to implement a system that could process overtime in a timely manner. *Nolan*, 162 F. Supp. 2d at 1001. In the present case, prior to July 3, 2009, the City compensated APD employees for accrued overtime hours in a timely manner. It was not until the APD Chief of Police modified the time sheet submission requirements that the City encountered delays in processing time. Additionally, there was no indication from the City that it was working to create a more timely and efficient system. Because the City is not an employer for the purposes of the mandatory compensation of overtime and has shown a previous ability to provide timely calculation of overtime hours, we determine this case is not analogous to *Nolan* and decline to extend the *Nolan* interpretation to contrary New Mexico law. In any event, nothing within *Nolan* provides a basis in law by which we or the City can conclude that the payment requirements of Section 50-4-2(A), even considered in the light of the MWA, may be circumvented.

4. **The City is Not Vested With the Authority to Implement its Own Pay Schedule, in Conflict with Section 50-4-2(A), by Virtue of its Status as a Home Rule**

9

**Municipality**

**{26}** In its final exemption argument, the City asserts that it has the right to administer its currently implemented pay schedule under the home rule provision of Article X, Section 6 of the New Mexico Constitution. The home rule provision provides that "[a] municipality which adopts a charter may exercise all legislative powers and perform all functions not expressly denied by general law or charter." N.M. Const. art. X, § 6(D). A" 'general law' " is a "law that applies generally throughout the state, or is of statewide concern, as contrasted to a 'local' or 'municipal' law[.]" *City of Albuquerque v. N.M. State Corp. Comm'n*, 1979-NMSC-095, ¶ 7, 93 N.M. 719, 605 P.2d 227. A determination of whether the state has expressly denied a municipality's authority to act "involves an inquiry into whether the statute evinces any intent to negate the municipal legislative power at issue[.]" *Prot. & Advocacy Sys. v. City of Albuquerque*, 2008-NMCA-149, ¶ 47, 145 N.M. 156, 195 P.3d 1 (alterations, internal quotation marks, and citation omitted). The general law need not have explicit language of negation; "words or expressions which are tantamount or equivalent to such a negation are equally effective." *State ex rel. Haynes v. Bonem*, 1992-NMSC-062, ¶ 22, 114 N.M. 627, 845 P.2d 150.

**{27}** Our first step in determining if the City's creation of its own overtime compensation schedule is expressly denied by general law is whether Section 50-4-2 is a general law. "A general law impacts all inhabitants of the state rather than just the inhabitants of a municipality." *NMFE*, 2006-NMCA-007, ¶ 18. Although Section 50-4-2(B) does create a limited exception for the compensation of many state employees, employee compensation is a subject that affects working individuals statewide, not solely within the local bounds of the municipality of Albuquerque. Section 50-4-2 is a "general law because it applies generally throughout the state, relates to a matter of statewide concern, and impacts workers across the entire state." *NMFE*, 2006-NMCA-007, ¶ 18.

**{28}** In order to determine if Section 50-4-2 expressly denies the City the power to create an overtime compensation schedule that varies from the time line articulated in Section 50-4-2(A), we must consider whether Section 50-4-2(A) "evinces any intent to negate such municipal power, whether there is a clear intent to preempt that governmental area from municipal policymaking, or whether municipal authority to act would be so inconsistent with [Section 50-4-2(A)] that [Section 50-4-2(A)] is the equivalent of an express denial." *NMFE*, 2006-NMCA-007, ¶ 19. Here, Section 50-4-2(A) expressly creates an employee compensation time line in which an employer must pay its employees for all services rendered within ten days after the completion of the pay period. *See A.C. Elec., Inc.*, 1998-NMCA-141, ¶ 20. As we have determined, the City is included in the definition of an "employer" under Section 50-4-1(A), the definitional provision applicable to Section 50-4-2(A), and we conclude that the creation of an exemption on the basis of the City's home rule status would in effect defeat the Legislature's apparent intent to preempt municipal action in this area. Because Section 50-4-2(A) articulates an express compensation schedule for all services rendered and contains no broadly worded exception into which municipalities such as the City fall, we conclude that the statute's timeliness mandate serves as an express denial

10

of the City's proffered authority to create its own overtime compensation schedule for APD employees.

**{29}** Although the City argues that the compensation of its employees is a "locally limited proprietary function and falls within the home rule" and that it has the autonomy to act without state interference in matters of local concern, the City is not acting in an area of purely local concern. While it is true that the state cannot constitutionally deprive a home rule municipality from legislating on purely local affairs, *see Apodaca v. Wilson*, 1974-NMSC-071, ¶ 16, 86 N.M. 516, 525 P.2d 876, the specific issue of concern here is not the compensation of all City employees, but the overtime compensation of employees of the City's *police* department. The operation of a police force is not a local or proprietary function, but a governmental one. *Barnett v. Cal M, Inc.*, 1968-NMSC-159, ¶ 8, 79 N.M. 553, 445 P.2d 974 ("It is firmly established by the great weight of authority that the operation of a police department is a governmental function[.]"). As a governmental function, the City acts in this analysis as an agent of the state; thus, the compensation of employees of its police force is not incidental to its authority under the home rule. *See N.M. State Corp. Comm'n*, 1979-NMSC-095, ¶ 8 (concluding that a municipality carrying out a governmental function is acting as an agent of the state, and only when a municipality is acting in a proprietary capacity is a power incidental to the home rule). Here, because the City acts in a governmental capacity in this area of general public concern, it does not have the autonomy to act free from legislative interference by the state and is bound by the general law directives of Section 50-4-2(A).

**CONCLUSION**

**{30}** For the foregoing reasons, we reverse the district court's decision to grant summary judgment to the City and remand for further proceedings consistent with this Opinion.

**{31}** **IT IS SO ORDERED.**

_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Judge**

_____
**MICHAEL E. VIGIL, Judge**

11